LONNIE D. GIAMELA
E-Mail: lgiamela@fisherphillips.com
CHRISTOPHER M. AHEARN, SBN 239089
E-Mail: cahearn@fisherphillips.com
SEAN T. KINGSTON, SBN 276099
E-Mail: skingston@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Attorneys for Defendant
AIR METHODS CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER R. LYONS and AMELIA G. VIELGUTH, individually and on behalf of all those similarly situated, | Case No: |
| Plaintiffs, | **DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT** |
| v. | |
| AIR METHODS CORPORATION, and DOES 1 - 100, inclusive, | Complaint Filed: February 5, 2020<br>Trial Date:    None Set |
| Defendants. | |

---

DEFENDANT AMC'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT

Defendant AIR METHODS CORPORATION (hereinafter referred to as "Defendant" or "AMC") hereby removes the above-captioned action from the Superior Court of the State of California, in and for the County of Alameda, to the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1331, 1332(d) (the Class Action Fairness Act), 1441, 1446, and 1453, and the Airline Deregulation Act, 49 U.S.C. §§ 41713, *et seq*. Such removal is based upon and supported by the following.

## I.    THE STATE COURT ACTION

1.    On or about February 5, 2020, Plaintiffs CHRISTOPHER R. LYONS (hereinafter, "Lyons") and AMELIA G. VIELGUTH (hereinafter, "Vielguth") (hereinafter collectively, "Plaintiffs") filed an unverified "Complaint for Violation of Labor Code, California Industrial Welfare Commission Orders, and California Unfair Competition Law" in the Superior Court of the State of California, in and for the County of Alameda, thereby initiating the civil action entitled *Lyons, et al v. Air Methods Corporation*, Cal. Super. Ct. (Alameda) Case No. RG20053409 (hereinafter, the "State Court Action").  A true and correct copy of the Complaint is attached hereto as <u>Exhibit A</u> (hereinafter, the "Complaint").

2.    The County of Alameda is within the territory of the United States District Court for the Northern District of California.

3.    Plaintiffs' Complaint asserts causes of action for: (1) Violation of California Labor Code and Industrial Wage Orders- Meal and Rest Periods; (2); Violation of California Labor Code and Industrial Wage Orders- Overtime; (3) Violation of California Labor Code and Industrial Wage Orders- Itemized Pay Statements and Time/Pay Records; and (4) Violation of California Unfair Competition Law.

4.    True and correct copies of all other process, pleadings and orders (*see* 28 U.S.C. § 1446(a)) that have been served on AMC in the State Court Action are attached hereto, respectively, as <u>Exhibit B</u> (Summons), <u>Exhibit C</u> (Civil Cover Sheet), <u>Exhibit D</u> (ADR Info Packet), and <u>Exhibit E</u> (Notice of Related Case).

5.    The Complaint, along with <u>Exhibits B</u> through E hereto, were served on AMC by personal service on its registered agent in California, on February 6, 2020.

6.      AMC is and was, at all times during the Class Period, a provider of Helicopter Emergency Medical Services ("HEMS") or, as it is also known, "Air Ambulance" services, operating from bases located throughout California, mainly at regional airports.

## II.   REMOVAL IS SUBJECT TO A LIBERAL PLEADING STANDARD

7.      In 2014, the U.S. Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, and that accordingly such notices need not attach evidence or meet a burden of proof, but rather need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551-554 (2014) (quoting 28 U.S.C. § 1446(a)).  This governing principle also applies to a removing party's allegations as to the amount in controversy.  *Id.*; *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1196-1197 (9th Cir. 2015).  Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of the evidence standard.  *Dart Cherokee, supra*, 135 S.Ct. at 553-554.

## III.   THE U.S. DISTRICT COURT HAS JURISDICTION PURSUANT TO THE
## CLASS ACTION FAIRNESS ACT

8.      On February 18, 2005, Congress enacted the Class Action Fairness Act of 2005 (hereinafter, the "CAFA").  The CAFA gives U.S. District Courts original jurisdiction over civil class action lawsuits in which any member of the putative class is a citizen of a state different from any defendant, and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446. While there are a number of exceptions to this rule of original jurisdiction contained in 28 U.S.C. §§ 1332(d)(3)-(5), no such exceptions apply here.

9.      There is no "presumption against removal" when a defendant seeks to remove pursuant to the CAFA.  *Dart Cherokee, supra*, 135 S.Ct. at 554.

/ / /

DEFENDANT AMC'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT

10.     This Court has original jurisdiction over this case under the CAFA, in that the case is a civil putative class action wherein the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and at least one member (if not all) of the class of plaintiffs is a citizen of a state different than that of AMC. *See* 28 U.S.C. § 1332(d).

11.     Plaintiffs' Complaint asserts all of Plaintiffs' claims on behalf of a putative class consisting of "[a]ll persons who, having been hired by AMC since January 14, 2016[1], performed services as a Flight Paramedic or Flight Nurse and all persons, regardless of when hired by AMC, who performed such services at any time after entry of judgment in the Helmick Action until such time as there is a final disposition of this lawsuit" (hereinafter, the "Putative Class"). Complaint, ¶ 15. The "Helmick Action" refers to a related pending case (in the California Superior Court, County of Alameda) in which the certified class members hold the same type of job positions with AMC as the putative class members in this action. Complaint, ¶¶ 9-12. There are certain key limitations on the scope of the class claims in the Helmick Action, however, namely: (1) they do not include *class* claims of persons hired by AMC since January 14, 2016 (though PAGA[2] claims of such persons were included in the Helmick Action); and (2) they do not include claims that allegedly accrued after the date of judgment in the Helmick Action[3]. *Id.* Plaintiffs seek, in this action, to bring (1) class and PAGA claims for all putative class members employed during the applicable limitation period(s) in this action, regardless of when hired; and (2) additional claims related to overtime and meal/rest premiums for putative class members hired since January 14, 2016. *Id.*

---

[1] Defendant notes that given the 4-year limitation period on wage claims in California (*See Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal. 4th 1094, 1105-1114 (2007), the limitation period in this action should only extend back to February 5, 2016. However, Plaintiffs appear to be relying on a tolling theory based on the pendency of *Helmick*, and accordingly Defendant uses the time period since January 14, 2016 as the basis of this calculation, insofar as Plaintiffs have pleaded it. By no means should this be construed to be a waiver of Defendant's statute of limitation defense – it is for removal purposes only. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998); *see also Worthams v. Atlanta Life Ins. Co.,* 533 F.2d 994, 998 (6th Cir. 1976).

[2] Herein, "PAGA" refers to the California Labor Code Private Attorneys General Act of 2004, Cal. Lab. Code §§ 2698, *et seq.*

[3] The date of judgment in the *Helmick* action has not yet occurred, however, trial (Phase II – in relation to class and PAGA claims) is complete, as is post-trial briefing.

12.     By Plaintiffs' own allegations, there are more than one hundred (100) persons who meet the class definition referenced in paragraph 11 above, and as such CAFA's exception for classes of fewer than one hundred (100) persons does not apply.  *See* 28 U.S.C. § 1332(d)(5)(B); Complaint, ¶ 17.

13.     Under 28 U.S.C. § 1453(b), a part of the CAFA, "a class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(b) shall not apply), without regard to whether a defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants." CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants are citizens, when one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen, or when one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a).

14.     Plaintiff Lyons was, at the time of the filing of the Complaint, and remains as of the filing of this Notice of Removal, a resident and citizen of the State of California.  *See, e.g.,* Complaint, ¶ 8. Additionally, Plaintiff Vielguth was, at the time of the filing of the Complaint, and remains as of the filing of this Notice of Removal, a resident and citizen of the State of California. *And*, neither Lyons nor Vielguth was a citizen of the states of Colorado or Delaware at such times.

15.     A corporation is deemed to be a citizen of the state in which it is incorporated and where it has its principal place of business.  28 U.S.C. § 1332(c)(1).  The phrase "principal place of business" "refers to the place where the corporation's high-level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).  This is the corporation's "nerve center." *Id*. at 78.  "[I]n practice [this] should normally be the place where the corporation maintains its headquarters. . ." *Id*.  The headquarters is the place from which the corporation's business activities are directed, controlled, and coordinated. *Id*.  At all times since at least January 14, 2016, the following have been the case with regard to AMC:  (a) it has been a Corporation, incorporated in and under the laws of the State of Delaware; (b) its

corporate headquarters, where its "high level" officers and executives have directed, controlled, and coordinated AMC's business operations, has been located in the State of Colorado; (c) its core executive and administrative functions have been carried out in the State of Colorado, including but not limited to all legal work and analysis, policy-making and decisions, corporate communications (internal and external), advertising and marketing, and centralized information technology operations. Declaration of Claire Capacci ("Capacci Decl."), at ¶ 2. Therefore, AMC is, and has been since January 14, 2016, a citizen of the states of Delaware and Colorado. *Hertz, supra*, 559 U.S. at 78.

16.     Based upon the foregoing, minimal diversity is established at the time of the filing of Plaintiffs' Complaint on February 5, 2020, and as of the filing of this Notice of Removal, Plaintiffs were citizens of California, and neither of the Plaintiffs were citizens of Delaware or Colorado at such times, and AMC has been a citizen of Delaware and Colorado at all times since at least January 14, 2016. *See* 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a), (b); *Hertz, supra*, 559 U.S. at 78. 17.     There are no named co-defendants in this action. And, in any event, consent of co-defendants is not required for removal under the CAFA. 28 U.S.C. § 1453(b); *United Steel, et al. v. Shell Oil Co.*, 549 F.3d 1204, 1208-1209 (9th Cir. 2008).

17.     Section 28 U.S.C. § 1332(d) (a part of the CAFA) authorizes the removal of class action cases in which, among other factors mentioned above, the amount in controversy for all class members exceeds $5 million.

A.     <u>**Plaintiffs' Pleading of Limited Amounts in Controversy Carries No Weight**</u>

18.     Plaintiffs allege, upon information and belief, that the amount in controversy of their claims and those whom they seek to represent is less than five million dollars ($5,000,000). Complaint, at ¶ 7. However, because this amounts to an attempt by a class representative to limit the scope of relief available to the class, such bald declarations of the amount in controversy have no weight. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). Where, as here, a defendant believes Plaintiff's allegations understate the amount in controversy, the defendant can meet its burden on removal to establish the amount in controversy by an unchallenged, plausible assertion of the amount in controversy in its notice of removal. *See Dart Cherokee, supra*, 135

S.Ct. at 554-55; *Ibarra*, *supra*, 775 F.3d at 1195, 1197-1192.  When Plaintiff challenges the Defendant's assertion on a motion for remand, both sides may submit proof.  *Id.* Accordingly, although Defendant has voluntarily submitted some evidence herewith to provide information and context to the parties and the Court, to the extent Plaintiffs seeks remand to the California Superior Court, Defendant requests the ability to submit such additional proof. *Id.*

**B.**     **The Record in the *Helmick* Action Establishes that the Amount in Controversy Exceeds $5,000,000**

19.     As follows, the record of the *Helmick* action belies Plaintiffs' attempt to plead around CAFA removal.

*1.     The Inclusion of Class Action Remedies after January 14, 2016 is a Disputed Issue in Helmick.*

20.     Plaintiffs argue that they only seek to recover unpaid overtime premiums, and meal and rest period premiums from January 14, 2016 forward, stating that the court in the *Helmick* case will adjudicate the claims for overtime and meal and rest period premiums through entry of judgment in the *Helmick* case.  *See* Complaint, at ¶ 12.  The issue of recovery of such premiums as to the time period after January 14, 2016 is, however, a disputed issue in the *Helmick* action. The dispute manifested itself initially on a motion Plaintiffs brought in August 2017 for an injunction to require AMC to commence paying daily overtime on 24-hour shifts, shortly after the trial court ruled that the Section 3(K) exemption on which AMC relied did not apply. (Declaration of Christopher M. Ahearn ("Ahearn Decl."), ¶ 2, Exhibit A thereto [Notice of Motion for Preliminary Injunction, filed August 3, 2017].) AMC opposed the motion, including on the ground that the trial court's class certification order terminated the class period as of the time of class notice, which Plaintiffs concede in their Complaint in this action was January 14, 2016. *See* Complaint, ¶ 9; Ahearn Decl., ¶ 3, Exhibit B thereto [AMC Opposition to Motion for Preliminary Injunction, filed August 14, 2017], at 2:26 – 3:2; Ahearn Decl., ¶ 4, Exhibit C thereto [Order-Motion for Class Certification Granted, filed November 24, 2015], p. 7.) Although the trial court denied Plaintiffs' motion on the ground that Plaintiffs had "not shown that pecuniary compensation would not afford adequate relief", where the "class representatives and many class

members no longer worked for Defendant, and any Flight Crew who began their employment after the class period closed would also be affected by proposed preliminary injunction", the court did not directly rule on the question of the availability of class remedies for overtime and meal/rest period premiums for the time period after January 14, 2016. (Ahearn Decl., at ¶ 5, Exhibit D thereto [Order Denying Motion for Preliminary Approval, filed August 25, 2017].)

21.     The parties' dispute in this regard continues to this day, and is referenced parties' post-trial briefs, and in their objections (and responses thereto) to the Court's pending statement of decision. Ahearn Decl., at ¶ 6, Exh. E thereto [Def. AMC's June 24, 2019 Trial Brief], at 10:23-11:1; ¶ 7, Exh. F thereto [Plaintiffs' Sept. 18, 2019 Post-Trial Brief], at 8:3-9:5; ¶ 8, Exh. G thereto [AMC's Post-Trial Brief] at 24:23-25:14 & fn 172-177 (Restricting class damages to "Period 1" as referenced in Defendant's expert analysis of Robert Crandall); ¶¶s  9-10, Exhs. H, I thereto [Crandall presentation referenced in Exh. H, Trial Exhibit No. 806], at p. 48-70; ¶ 11, Exh. J thereto [Def. AMC's Objections to Proposed Statement of Decision], at 4:4-8; ¶ 12, Exh. K thereto [Def. AMC's Resp. to Pltfs' Obj. to Prop. Stmt. Of Decision], at 5:15-18.  The Court's pending statement of decision, which resolved certain legal issues in the case, was preliminary only, and no final statement of decision has issued. Ahearn Decl., at ¶ 13, Exh. L thereto [Court's Jan. 16, 2020 Statement of Decision], at para. 2 thereto (declining to adopt paragraphs 37-46 regarding Plaintiffs' proposed class period damages, and failing to mention the question of the class period damages cutoff in January 2016); ¶ 14, Exh. M thereto [Plaintiff's Sept. 18, 2019 Proposed Statement of Decision], at 37-46 (including class damages past January 2016). Specifically, the Court has not yet ruled on the amount of monetary remedies, including the question of whether class damages include those accrued after January 14, 2016. Id. Such matters remain in dispute including based on AMC's objections to the Court's proposed statement of decision.

22.     Plaintiffs' own calculations of daily overtime premiums, and meal/rest period premiums, for the class, for the period after January 14, 2016 and through May 11, 2019, is as follows, excluding interest and costs. Plaintiffs' post-trial brief gave these amounts as: (a) overtime premiums in the amount of $9,608,684; (b) meal period premiums in the amount of

$883,032, and (c) rest period premiums in the amount of $935,879. *See* Ahearn Decl., ¶ 7, <u>Exhibit F</u> [Plaintiffs' Post-Trial Brief], at p. 14 Chart, 'Period '2' through 'Period 5', for 'OT Premiums', 'Missed Meal Period Premiums', and 'Missed Rest Period Premiums'). Moreover, inasmuch as AMC has not paid daily overtime for the approximately 10 months since May 11, 2019, and because no judgment has been entered in the *Helmick* action, an additional $2,271,040 would have been due, under Plaintiffs' theory, based on Plaintiffs' experts estimated daily accrual amounts for the time period after May 11, 2019.[4] *See Id.*, 'Estimated Daily Amount After 5/11/2019' (Overtime:  $6,285 x 302 days= $1,898,070; Meal Periods: $594 x 302 days= $179,388; Rest Periods: $641 x 302 days= $193,582; Total: $2,271,040). When added together, these amounts total $13,698,635.

23.     Should such amounts not be recoverable in the *Helmick* action, they would be within the scope of relief sought in this action. Complaint, ¶ 12. Accordingly, the amount in dispute in this action is at least $13,698,635. According to Plaintiffs' own materials, this amount include overtime, and/meal rest premiums for medical flight crew hired after January 14, 2016, on the ground that such persons are indisputably not class members, and based on the California Supreme Court's decision in *ZB, N.A. v. Superior Court*, Plaintiffs' PAGA claims do not provide a basis of recovery of overtime and meal/rest premiums. *ZB, N.A. v. Superior Court*, 8 Cal. 5th 175 (2019); Ahearn Decl., at ¶ 7, Exh. F thereto [Plaintiffs' Sept. 18, 2019 Post-Trial Brief], at 8:3-9:5. Accordingly, daily overtime and meal/rest premiums for post-1/14/2016 hires are not included in this section, because they are indisputably not class members and so the parties' dispute concerning the application of class remedies of daily overtime and meal/rest premiums does not apply to them. Such amounts are addressed in section III.B.2, *infra*.

/ / /

/ / /

/ / /

---

[4] The figures provided herein are provided for removal purposes only.  Defendant reserves the right to challenge the actual amount of damages in subsequent proceedings and at trial.  *See Sparta*, 159 F.3d at 1213; *see also Worthams, supra*, 533 F.2d at 998.

DEFENDANT AMC'S NOTICE OF REMOVAL TO U.S. DISTRICT COURT

2.      *Plaintiffs Seek Remedies in This Action for Wages Indisputably Not Recoverable Under PAGA in the Helmick Action*

24.     As to California medical flight crew hired after January 14, 2016 (who were not deemed class members as noted in Section III.B.1, *supra*), Plaintiffs in *Helmick* claimed the amount of alleged overtime wages and meal/rest premiums under PAGA[5], pursuant to Cal. Lab. Code §§ 558, under the theory that such statute allowed employees to recover such amounts as wages in a PAGA claim. Complaint, ¶¶ 9-12. However, following the California Supreme Court's decision in *ZB, N.A. v. Sup. Ct.*, 8 Cal. 5th 175 (2019) that such recovery is not permissible in a PAGA claim, Plaintiffs eliminated such amounts from their claimed remedies, and they now seek such amounts in this action. Complaint, ¶¶ 9-12.

25.     The record in the Helmick action demonstrates that the value of such amounts is at least as follows, comparing Plaintiffs' pre- and post-Trial monetary remedies estimates: $2,488,549.35. *See* Ahearn Decl., at ¶ 7, Exh. F [Plaintiffs' Post-Trial Brief], p. 14 Chart; Ahearn Decl., ¶¶s 15, 17, Exh. P [Trial Exhibit 236]. Plaintiffs admitted those numbers were conservative. See Ahearn Decl., ¶ 7, Exh. F [Pltfs' Post-Trial Brief], at p. 11:22-23. Moreover, such amounts did not include waiting time penalties for terminated class members, or Labor Code section 226(e) penalties.   AMC contests Plaintiffs' calculations and alleges that the actual amounts in controversy as to post-January 14, 2016 hires are significantly higher, as stated, *infra*., in section II.C.

3.      *Plaintiffs' Complaint Manifests An Intent to Plead "Off-the-Clock" Claims, Despite the Form of their Pleading.*

26.     Plaintiffs plead an intent to seek claims that were the subject matter of a partial settlement in the *Helmick* action, but that arose during the period following the end date of the release period of that settlement, February 14, 2018. Complaint, ¶ 14.

27.     The prior settlement included claims for the following types of "off the clock" work: (1) unpaid wages; (2) off-the-clock work; (3) late dispatch hours; (4) pre/post-shift

---

[5] PAGA claims are not subject to class certification requirements when proceeding in the Superior Court of California. *See Arias v. Sup. Ct. (Angelo Dairy)*, 46 Cal.4th 969, 981-82 (2009).

activities; (5) on-line training; (6) in-person training; (7) preceptor duties; (8) time worked beyond time scheduled or worked as recorded in Defendant's timekeeping and scheduling systems; (9) waiting time penalties pursuant to Cal. Lab. Code § 203 for employees separated from employment during the relevant statutory period; and (10) a related claim for penalties for failure to report such alleged compensable time on wage statements pursuant to Cal. Lab. Code § 226(a). Ahearn Decl., ¶ 18 & Exh. Q [Pltfs' MPA ISO Mot. for Approval of Settlement], at 7:19-8:2. The release included pay for hours worked at the regular rate of pay, but excluded overtime premiums associated with such hours. *Id.*

28.     Although Plaintiffs have not stated an enumerated cause of action for unpaid wages or off-the-clock work, Plaintiffs manifest an intent to pursue such claims in this action. They state "[n]otwithstanding any other allegation herein, other than for overtime, meal/rest breaks, and related claims for civil penalties, Plaintiffs' claims herein are limited in time to those arising after the later of February 14, 2018 or any applicable statute of limitations." Complaint, ¶ 14. Notably, Plaintiffs' causes of action only purport to state causes for overtime, meal/rest breaks, and related penalties. Complaint, at 9:3-14:18. Accordingly, the foregoing reference to claims "other than for overtime, meal/rest breaks, and related claims for civil penalties", in the context of paragraph 14, can only refer to the type of off-the-clock claims resolved by the partial settlement. *See* Complaint, ¶ 14. Otherwise, Plaintiffs would have no reference to state a limitation on their claims with reference to the February 14, 2018 date. *See id.* Plaintiffs' attempt to gloss over this issue by not alleging an enumerated "cause of action", labeled as such, is not dispositive. *See A.J. Fistes Corp. v. GDL Best Contractors, Inc.*, 38 Cal. App. 5th 677, 686, 694-695 (2019) (violation of Rule 2.112 of the California Rules of Court by not separately enumerating cause of action not dispositive – courts look to fact allegations); *City of Los Angeles v. Sup. Ct.*, 85 Cal. App. 3d 143, 149 (1978) (cause of action consists of fact allegations from which a primary right arises).

29.     Plaintiffs' allegations in paragraph 14 are incorporated by reference into each of their causes of action, including for penalties pursuant to Cal. Lab. Code §§ 203 and 226(e). Complaint, ¶¶ 30-32, 35-37, 40-42, 45-46.

10

30.     Based on Plaintiffs' allegations and analysis in support of their off-the-clock claims in the *Helmick* action, the valuation of such claims for removal purposes in this action is as follows. In the *Helmick* action, for example, multiple class members testified in deposition that they routinely arrived up to thirty (30) minutes early for shifts under circumstances when they were under AMC's control (thus rendering such time compensable), without compensation. Such uncompensated time (and the above is by no means comprehensive as to Plaintiffs' off-the-clock allegations), even conservatively assuming fifteen (15) minutes per shift, amounts to $115,527.93 or more for putative class members hired after January 14, 2016 (.25 hours per shift x 14,840 shifts x $29.97 per hour). This would additionally allegedly include "separation pay" penalties pursuant to Cal. Lab. Code § 203 and wage statement penalties pursuant to Cal. Lab. Code § 226(e), in the same amounts stated below in section III.C, *infra*, namely $476,950.00 for separation pay penalties, and $888,607.20 for wage statement penalties, though keeping in mind that such penalties should not be double-counted.

**C.     AMC's Own Data Also Establishes the CAFA Amount in Controversy, and Belies Plaintiffs' "Conservative" Calculations as to Post-January 14, 2016 Hires in California.**

31.     During the Class Period, Defendant's California operations consisted of a number of "bases" from which its helicopters have operated, performing air ambulance and other services.  At all times from January 14, 2016 to the present, although AMC's number of bases has varied over time, there have been at least twelve (12) bases in California, not counting bases located on federal military installations (which as pleaded below are not subject to California law). Declaration of Claire Capacci ("Capacci Decl."), ¶ 2. At all times from January 14, 2016 to the present, all such bases have been in continuous operation, every day, twenty-four (24) hours per day, with very limited exceptions due for example to unusual weather conditions. *Id.*, at ¶ 3.  At all such times, the bases have generally been staffed with at least three (3) flight nurses and three flight paramedics, working in non-consecutive 24-hour shifts. *Id.*, at  ¶ 4.  AMC has, throughout the time period since January 14, 2016, paid weekly overtime to medical flight crew for all hours worked over forty (40) in a week, at the rate of 1.5x the employee's regular rate of

11

pay. *Id.* at ¶ 9.  AMC has, throughout the time period since January 14, 2016, paid medical flight crew in California on a bi-weekly basis. *Id.* at ¶ 10.

32.     According to AMC's employee data, there have been at least approximately <u>14,840 24-hour shifts</u> since January 14, 2016, which figure was calculated as follows. AMC's normal schedules for California medical flight crew, throughout the period since January 14, 2016, have consisted of working two (2) 48-hour flight duty shifts per week. After accounting for leaves of absence, temporary base closures, vacations, sick time, etc., however, such medical flight crew members have, during the time period since January 14, 2016, worked, on average, approximately seven (7) 24-hour flight duty shifts per month. *Id.* at ¶ 8.  With these facts in mind, AMC performed calculations on an employee data report showing, as to each AMC medical flight crew member who worked at a California base after January 14, 2016: their period of employment with AMC in including date of hire, and date of separation, if any. *Id.*, at ¶6, Exh. A; Ahearn Decl., at ¶ 20. In an effort to be conservative, the report excludes any employees who worked both in California and in another state during the time period since January 14, 2016. Capacci Decl., ¶ 6 & Exh. A. To calculate the number of shifts, AMC determined the number of calendar months between (a) each person's hire date; and the earlier of (b) such persons' separation dates, or (c) March 7, 2020, and multiplying the resulting number, for each putative class member, by seven (7), then totaling the shift count estimates for the entire group. *See* Capacci Decl., ¶ 6, Exh. A, columns "Original Hire Date" and "Termination Date."

33.     AMC's flight crew hired after January 14, 2016 and who worked in California generally earned an average of $29.97 per hour during the class period. *See* Capacci Decl., ¶ 6 & Exh. A, column "Hourly Pay Rate".  This was calculated by averaging the rates of pay at the time of hire as listed in an employee data report.  *Id.* That aligns with Plaintiff's figure of $29.92 per hour, provided by Plaintiff's expert in the *Helmick v. Air Methods Corporation* case. Declaration of Christopher M. Ahearn, ¶¶s 15-17, and Exhs. N, O, and P thereto [Trial Transcript, July 10, 2019], at 27:11-29:18, 47:12-48:2, Trial Exhibit 257, and Trial Exhibit 236 and Exhibit 1 thereto.

/ / /

/ / /

### D.      Meal Period Claim

34.      Plaintiff's First Cause of Action alleges that AMC failed entirely to provide flight crew with meal periods as required by California law.  *See* Complaint, ¶¶ 26, 31. Plaintiffs claim one hour of pay for each day that Defendants did not provide all required meal periods.  *Id*. at ¶ 33.  Plaintiff's claim for meal period "premiums" is potentially subject to up to a four-year limitation period.  *See Murphy, supra*,., 40 Cal. 4th at 1105-1114. However, Plaintiffs claim meal period premiums for employees hired since January 14, 2016 who worked in California (and excluding those who also worked outside of California). The January 14, 2016 is used rather than February 5, 2016 (4 years prior to the filing date of this action), evidently based on a tolling theory related to the *Helmick* Action. *See* Complaint, ¶¶ 12, 15, 18, 24.

35.      Accordingly, potential liability at issue on Plaintiffs' meal period claim, as to employees hired since January 14, 2016 who worked in California (and excluding those who also worked outside of California) is at least:  1 premium x $29.98/hr. x 14,840 shifts = **$444,903.20**.

### E.      Rest Period Claim

36.      Plaintiff's Third Cause of Action alleges that AMC failed entirely to provide pilots with rest periods as required by California law.  *See* Complaint, ¶¶ 28, 48-51.  Plaintiff claims one hour of pay for each day that Defendants did not provide all require rest periods.  *Id*. at ¶ 46.  Plaintiff's claim for meal period "premiums" is potentially subject to up to a four-year limitation period.  *See Murphy, supra*, 40 Cal. 4th at 1105-1114. However, Plaintiffs claim rest period premiums for employees hired since January 14, 2016 who worked in California (and excluding those who also worked outside of California). The January 14, 2016 is used rather than February 5, 2016 (4 years prior to the filing date of this action), evidently based on a tolling theory related to the *Helmick* Action. *See* Complaint, ¶¶ 12, 15, 18, 24.

37.      Accordingly, potential liability at issue on Plaintiff's rest period claim, as to employees hired since January 14, 2016 who worked in California (and excluding those who also worked outside of California) is at least:  1 premium x $29.97/hr. x 14,840 shifts = **$444,903.20**.

/ / /

/ / /

F.      **Overtime Claim**

38.     Plaintiff's Second Cause of Action alleges that AMC failed to pay class members for all overtime premiums earned.  Complaint, ¶¶ 25, 36.  Putative class members normal schedules, throughout the time period from January 14, 2016, have consisted of working two (2) 48-hour flight duty shifts per week. Capacci Decl., at ¶ 9. AMC has, throughout the period since January 14, 2016, paid weekly overtime for all hours worked over forty (40) in a week at the rate of 1.5x the employee's regular rate of pay. *Id.*, at ¶ 10. AMC has additionally paid daily overtime where certain sleep period interruption criteria are met, however, Plaintiff has challenged the sufficiency of AMC's policies and practices in such regard. *Id.*, at ¶ 11; Complaint, at ¶ 25. Accordingly, if daily overtime were to be applied under Plaintiffs' theories, liability would consist, on average, of twelve (12) hours of overtime premium pay per 24-hour flight duty shift. *See id.* Such overtime would be at 2x the regular rate of pay. *See* Cal. Lab. Code § 510(a). But, because Plaintiffs do not claim on this cause of action that the 1.0x regular "straight time" component was unpaid (*See* Complaint at ¶¶s 36-39), and assuming that the 1.5x overtime premium on the 4 hours worked over 8 hours and up to 12, of a 24 hour shift, is paid under AMC's policy and practice of paying weekly overtime, the allegedly unpaid premium on this claim would consist only of an additional 1.0x component on hours over 12 and up to 24, for a total of 2.0x the regular rate. *See* Cal. Lab. Code § 510(a).

39.     Plaintiffs claim overtime extends back to January 14, 2016, and February 5, 2016 (4 years prior to the filing date of this action), evidently based on a tolling theory related to the *Helmick* Action. *See* Complaint, ¶¶ 12, 15, 18, 24. Accordingly, potential liability at issue on Plaintiffs' claim as to employees hired since January 14, 2016 who worked in California (and excluding those who also worked outside of California) is at least:  $29.97/hr. x 1.0 premium x 12 hours (assuming 4 hours are paid as weekly overtime) x 14,840 shifts = **$5,338,838.40**.

G.      **Wage Statement Penalties**

40.     On Plaintiffs' claim for failure to provide accurate, itemized wage statements (Complaint, ¶¶ 28, 41), Plaintiffs may claim penalties in the amount of $50 for the initial pay period, plus $100 for each additional pay period, to a maximum of $4,000 per employee, with a

14

one-year limitation period.  Cal. Lab. Code § 226(e). Plaintiffs claim these penalties for the period from February 14, 2018 to present as to medical flight crew members hired to work in California, presumably under a tolling theory related to the *Helmick* Action, despite the normal 1-year limitation period on penalty claims. *See* Complaint, at ¶¶s 41-42; Cal. Code Civ. Proc. § 340(a). AMC calculated the amount of such potential penalties by looking at the total length of employment of employees employed during the period from February 14, 2018 in California (excluding those who also worked out of state) (based on an employee data report – *See* Capacci Decl., at ¶ 6, Exh. A, columns "Original Hire Date" and "Termination Date"), and counting the number of bi-weekly pay periods (AMC has paid bi-weekly throughout such time period – Capacci Decl. at ¶ 10), and valuing the initial pay period at $50, and each subsequent pay period at $100, but applying a "cap" of $4,000. As such, at least the following amount is put at issue by Plaintiff's wage statement claim as to California medical flight crew members hired since January 14, 2016 and separated since February 14, 2018 (excluding those who also worked outside of California):  5,667 pay periods (54 max per crew member) x [$50 (initial pay period penalty) + ($100 x 26 pay periods)] = **$464,950.00**.

### H.    Waiting Time Penalties

41.    In conjunction with their first and second causes of action, Plaintiffs are seeking waiting time penalties pursuant to Labor Code section 203, for all employees (hired to work in California since January 14, 2016) whose employment has separated since February 14, 2018. *See* Complaint, at ¶¶s 29, 32, and 37.  Separation pay or "waiting time" penalties can be up to 30 days' pay at the employee's daily rate of pay. Cal. Lab. Code § 203.  Although this claim has a 3-year limitation period, Plaintiffs cut off alleged liability at February 14, 2018, evidently based on the settlement in the *Helmick* Action. *See* Complaint, ¶ 14; *Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1395-1401 (2010). AMC's records indicate 26 putative class members (those who were hired since January 14, 2016 and worked only in California) were separated during the time period since February 14, 2018.  *See* Capacci Decl., ¶¶s 6, 9 & Exh. A, columns "Original Hire Date" and "Termination Date". Therefore, at least the following amount is put at issue by Plaintiffs' waiting time claims:  26 terminated employees x ($29.97/hr. x 8 hrs.) + ($29.97/hr. x

1   1.5 x 4 hrs.) + ($29.97 x 2 x 12 hrs.)s x 30 days = **$888,607.20**.

2       42.     Accordingly, the total amount in controversy on Plaintiff's claims is at least
3   **$7,597,042**.  What is more, including an additional 25% for attorney fees is warranted in class
4   actions.  *See Rodriguez v. Cleansource, Inc.*, No. 14-cv-0789, 2014 WL 3818304, at *1 (S.D.
5   Cal. Aug. 4, 2014); *Jasso v. Money Mart Exp., Inc.*, No. 11-cv-5500, 2012 WL 699465, at *7
6   (N.D. Cal. Mar. 1, 2012). This brings the total amount in controversy to $7,597,042 x 1.25 =
7   **$9,496,302.50**.

8       43.     By removing this matter, Defendant does not waive and, to the contrary, reserves,
9   any rights it may have including, without limitation, all available arguments and defenses,
10  including the right to move to compel Plaintiff's claims to arbitration. "The amount in
11  controversy is simply an estimate of the total amount in dispute, not a prospective assessment of
12  defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

13  **I.      Claims Arising from the Fort Hunter Liggett Base Should be Included**

14      44.     Although Plaintiffs acknowledge that the trial court in *Helmick* concluded that
15  AMC's base located at Fort Hunter Liggett, a military installation in Monterey County, is a
16  federal enclave where the California Labor Code does not apply (Complaint, ¶ 13), Plaintiffs also
17  state that they "allege that this is incorrect", and their Complaint, rather than simply stating that
18  they don't seek remedies as to this base, make the limited statement that they "do not seek
19  recovery *barred by the Federal Enclave doctrine* associated with the Fort Hunter Liggett base."
20  Complaint, ¶ 13. Accordingly, Plaintiffs have effectively alleged that they do not seek such
21  recovery, *if and only to the extent that* it is determined in this action that Fort Hunter Liggett is
22  indeed a federal enclave. *See id.* When read in conjunction with the phrase that they "allege that
23  this is incorrect," the only reasonable reading of the Complaint is that Plaintiffs have not
24  abandoned their claims as to Fort Hunter Liggett. *See id.* Nor could they. The trial court ruling
25  in *Helmick* on this issue is not necessarily binding in this action, given that neither Plaintiff Lyons
26  nor Plaintiff Vielguth were class members in *Helmick* (Ahearn Decl., ¶ 19, Exhibit R [Exhibit 1
27  to the Supplemental Declaration of James M. Sitkin in Support of Plaintiffs' Motion for
28  Preliminary Approval of Settlement], and Exhibit A thereto (Class List)]) and class

representatives are not permitted, through artful pleading, to limit the claims of class members for purposes of avoiding CAFA jurisdiction. *See Standard Fire, supra*, 568 U.S. at 593.

**J.      Summary of Amounts in Controversy**

45.      The three theories raised, *supra*, in sections III.B.1, III.B.2, and III.C are not necessarily mutually exclusive, but they also do not entirely overlap.  To assist the reader in this regard, the below chart summarizes the interplay between the three sections.

| | |
|---|---|
| 1.  Plaintiffs' claimed overtime premiums, meal/rest premiums, and 203/226 penalties, for *all* class members in *Helmick* as to the time period since January 14, 2016. Defendant's argument is that such class remedies are barred in *Helmick*, due to the close of the class period in that action, but are theoretically recoverable in this action under Plaintiffs' claims. *See* Section III.B.1, *supra*. | **$13,698,635** |
| 2.  Amount in controversy as to overtime premiums, and meal/rest premiums for putative class members hired post-1/14/2016, based on Plaintiffs' calculations. *See* Section III.B.2, *supra*. | **$2,488,549.35** |
| Plaintiffs' off-the-clock claims stated throughout the Complaint. *See* Section III.B.3, *supra*. | **$115,527.93** |
| AMC's assessment of the amount in controversy as to Plaintiffs' claims as to putative class members hired since January 14, 2016, including overtime premiums, meal/rest premiums, 203 and 226 penalties, and attorney fees. *See* Section III.B.3, *supra*. | **$9,496,302.50** |

46.     Accordingly, the above amounts should not be aggregated, but rather should be viewed as alternative and disputed theories of valuation of the amount in controversy in this action. *See id.*

**IV.     COMPLETE PREEMPTION BY THE AIRLINE DEREGULATION ACT**

47.     With respect to Plaintiff's claims, the preemptive effect of federal law is such that it displaces any state law cause of action and forms the basis of removal to the U.S. District Court. *See Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); 28 U.S.C. §§ 1331.

48.     The Airline Deregulation Act (ADA, 49 U.S.C. §§ 41713, *et seq.*) expressly prohibits states from enacting or enforcing any law relating to "price, route, or service of an air carrier …" 49 U.S.C. § 41713(b)(1).  The ADA preempts state-imposed obligations on air carriers; e.g., state laws regulating their "rates, routes or services." See *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 386-387 (1992); *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 222 (1995).

49.     AMC has, at all relevant times, been an "air carrier" governed by the ADA in that it has transported passengers (patients) on an on-demand basis by helicopter, and holds a certificate of public convenience and necessity issued by the Secretary of Transportation.  *See* 49 U.S.C. §§ 41713(b)(1), 44705; 14 C.F.R. Part 135.  Multiple federal courts have held that the ADA preempts state employment, labor and wage and hour laws as applied to such carriers, because of the inevitable impact that such regulations have on the carriers' prices, routes and services.  *See Ventress v. Japan Airlines*, 603 F.3d 676, 683 (9th Cir. 2010); *Angeles v. U.S. Airways*, 2013 WL 622032 (N.D. Cal. 2013).  In the case of AMC and its pilots, state laws regulating employees' working hours necessarily "relate to" AMC's routes and services in that, for example, if AMC is required to take a pilot out of service to provide him or her with an off-duty meal and/or rest period, then AMC's routes and services would necessarily be impacted, in that AMC may not be able to dispatch that pilot and his or her crew to pick up a particular patient, instead needing to dispatch a pilot and crew from a different, more distant, base, thus changing the route and the response time (the response time being an essential part of the *service* being provided). Accordingly, such claims are preempted by the ADA. *See Id.*

18

## V.    NOTICE, SERVICE, AND OTHER REQUIREMENTS ARE MET

50.    "Doe" defendants 1 through 20 are fictitious.  Pursuant to 28 U.S.C. § 1441(a), the citizenship of Defendants sued under fictitious names must be disregarded for the purposes of determining diversity jurisdiction and cannot destroy the diversity of citizenship between the parties in this action. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

51.    As required by 28 U.S.C. §1446(b), this Notice was filed within 30 days after Defendant was first served with a copy of Plaintiff' 'Summons and Complaint.

52.    In accordance with 28 U.S.C. §1446(d), Defendant will promptly provide notice of this removal to Plaintiff through his attorneys of record, and Defendant will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, in and for the County of Alameda.

53.    In the event this Court has a question regarding the propriety of this Notice of Removal, Defendant requests that it issue an Order to Show Cause so that it may have an opportunity to more fully brief the basis for this removal, and to produce supporting evidence

Dated:  March 9, 2020                                  Respectfully submitted,

                                                                   FISHER & PHILLIPS LLP


                                                       By:    /s/ Sean T. Kingston
                                                              LONNIE D. GIAMELA
                                                              CHRISTOPHER M. AHEARN
                                                              SEAN T. KINGSTON
                                                              Attorneys for Defendant
                                                              AIR METHODS CORPORATION

*Christopher R. Lyons, et al. v. Air Methods Corporation, et al.*,
USDC Northern District, Court Case No. TBD

**DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL
TO U.S. DISTRICT COURT**

**EXHIBIT A (Complaint)**

FP 35681615.7

1  JAMES M. SITKIN, SBN 107650
   LAW OFFICES OF JAMES M. SITKIN
2  One Kaiser Plaza, Suite 505
   Oakland, CA 94612
3  Telephone:    (415) 318-1048
   Facsimile:    (415)-362-3268
4  jsitkin@sitkinlegal.com

5  JOSHUA KONECKY, SBN 182897
   LESLIE JOYNER, SBN 262705
6  SCHNEIDER WALLACE COTTRELL
   KONECKY WOTKYNS LLP
7  2000 Powell St., Suite 1400
   Emeryville, CA 94608
8  T: (415) 421-7100
   F: (415) 421-7105
9  jkonecky@schneiderwallace.com
   ljoyner@schneiderwallace.com
10

11 Attorneys for Plaintiffs

ENDORSED
FILED
ALAMEDA COUNTY

FEB 0 5 2020

CLERK OF THE SUPERIOR COURT
By
JAMIE THOMAS, Deputy

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13          FOR THE COUNTY OF ALAMEDA, NORTHERN DIVISION

14                        (Unlimited Jurisdiction)

15

16

17 CHRISTOPHER R. LYONS and AMELIA G.
   VIELGUTH, individually and on behalf of all
18 those similarly situated,

19          Plaintiffs,
20
              vs.
21
22 AIR METHODS CORPORATION, and DOES 1
   – 100, inclusive,
23
          Defendants.
24

25

26

27

28

| | |
|---|---|
| Case No.  RG20053409 | |
| CLASS ACTION | |
| **COMPLAINT FOR VIOLATION OF CALIFORNIA LABOR CODE, CALIFORNIA INDUSTRIAL WELFARE COMMISSION ORDERS, AND CALIFORNIA UNFAIR COMPETITION LAW** | |
| DEMAND FOR JURY TRIAL | |

COMPLAINT

Plaintiffs Christopher R. Lyons and Amelia G. Vielguth (Plaintiffs), on behalf of themselves and all others similarly situated, demanding trial by jury, allege as follows:

## PARTIES

1.      Plaintiffs are informed and believe, and thereon allege, that defendant Air Methods Corporation (hereinafter "AMC") was and is a company in the business of providing intrastate community-based air medical transport services by helicopter and related ground services within the State of California involving the maintenance of bases for the helicopters.  AMC has not and does not operate ambulances on the ground within the State of California.

2.      Plaintiffs are adult individuals, competent to bring this action.  AMC employed Plaintiff Amelia G. Vielguth in California as a Flight Nurse from 2016, after January, to November 2018. AMC employed Plaintiff Christopher R. Lyons as a Flight Paramedic from June 2016 to September 2017. Plaintiffs hereinafter collectively refer to Flight Paramedics and Flight Nurses whom AMC employed within the State of California as "Flight Crew."   Flight Crew attend to patients whom AMC transports by air. Flight Crew includes those on AMC's helicopters who are sometimes called "Flight Medical Crew," "Medical Flight Crew," or "Medical Crew," which does not include the heliocopter pilots.

3.      AMC's practice is to assign Flight Crew a home base, though it also has Flight Crew temporarily work from other bases.  AMC subdivides Flight Crew work shifts between flight duty shifts and non-flight duty shifts.  AMC's practice is to require Flight Crew to remain on base except when called away on a job-related duty and to be available for dispatch on a medical transport during their flight duty shifts.  While on base during flight duty shifts, Flight Crew perform other job duties.  For example, on returning from a dispatch assocated with a medical transport, Flight Crew routinely clean and restock the helicopter and do extensive charting.  In another example, Flight Crew routinely do on-line training while at their bases. In another example, Flight Crew must remain in uniform during periods at the base. In another example, Flight Crew who have been designated Clinical Base Leads (formerly called Clinical Base Supervisors or Medical Base Supervisors) may relay information received from management during base meetings to other Flight Crew.  In another example, Flight Crew may share in cleaning the base.

-1-

4.      During non-flight duty shifts, AMC's practice is not to require Flight Crew to be available for dispatch on a medical transport. AMC assigns Flight Crew to attend mandatory trainings that may take place far away from their home base.  Flight Crew also may represent AMC at community or other publicity events.  Plaintiffs are informed and believe, and thereon allege, that AMC more regularly has had Flight Crew who also perform  Clinical Base Lead duties represent AMC at such events. During non-flight duty shifts, Flight Crew also may attend regular Program Meetings for operational and administrative direction.  Program Meetings regularly are attended by Flight Crew from more than one base.

5.      Based on a misclassification of Flight Crew as exempt employees under California law, AMC has wrongly failed to pay overtime and failed to provide duty free meal/rest periods or in their absence pay added wages.

6.      Plaintiffs are ignorant of the true names and/or capacities of the defendants sued herein as Does 1-100, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants is legally responsible for the occurrences herein alleged and that plaintiff's losses and damages are the result of their wrongful conduct.  AMC and Does 1-100 are hereinafter collectively referred to as "Defendants."

## UNLIMITED JURISDICTION AND VENUE

7.      The monetary value of each Plaintiff's claims exceeds $25,000.  Plaintiffs are informed and believe, and thereon allege, that the amount in controversy of their claims and those whom they herein seek to represent is less than five million dollars and this case does not qualify for removal under CAFA. Plaintiffs are informed and believe, and thereon allege that the amount in controversy of all claims of Plaintiff Christopher R. Lyons is less than seventy-five thousand dollars.

8.      During the relevant period, AMC has conducted its business and maintained a business location in this judicial district such that Flight Crew performed services for AMC within the county of Alameda, California, for which days of work they were entitled to overtime under California law, but

-2-

1  not paid overtime by AMC and for which days they were entitled to meal and rest breaks under
2  California law, but were not provided the opportunity to take meal and rest breaks and were not paid
3  premium wages in their absence by AMC . Thus, Plaintiff Christopher R. Lyons, while living within
4  this judicial district, where he continues to live, was assigned by AMC to and worked from an AMC
5  base within this judicial district. At said location, said Plaintiff worked sufficient hours to be entitled to
6  overtime, which AMC has not paid him, and worked sufficient hours to be entitled to meal and rest
7  breaks, which AMC did not provide and for which AMC did not pay premium wages in their absence.
8  Said Plaintiff's underpayment of wages occurred within this judicial district as well.

## PRIOR RELATED LAWSUIT

11  9.    The claims asserted herein do not overlap with those for which recovery has been or
12  will be obtained in the pending action against AMC entitled, William Loyd Helmick, et al. v. Air
13  Methods Corporation, Alameda County Superior Court, case no. RG13665373 (hereinafter "Helmick
14  Action"), filed January 30, 2013, in which those plaintiffs sought to recover back overtime and
15  premium wages for California Flight Crew, among other items of relief. By way of background, by
16  Order entered November 24, 2015, the Court certified a class of Flight Crew employed in California at
17  any time from January 30, 2009 through class notice, the initial issuance of which occurred on January
18  14, 2016, followed by subsequent transmissions later that year. Separate from the class claims, the
19  plaintiffs in the Helmick Action asserted representative, non-class claims under PAGA.

20  10.    The plaintiffs in the Helmick Action proceeded to trial on the basis that PAGA
21  permitted recovery under Labor Code § 558 of back overtime and premium wages such that recovery
22  of these back wages and related interest did not require assertion of claims on other bases or, more
23  specifically, membership in the class the Court certified in the Helmick Action.

24  11.    After the trial was conducted in July 2019 and during post-trial briefing, the California
25  Supreme Court entered its decision in ZB, N.A. v. Superior Court (2019) 8 Cal. 5th 175, in which it
26  held that Labor Code § 558 no longer could be employed by private PAGA plaintiffs as a vehicle to
27  recover back wages. In the post-trial briefing, plaintiffs in the Helmick Action consequently modified

-3-

COMPLAINT

their damage model to exclude recovery of back wages and interest by non-Class members, i.e. those Flight Crew, like Plaintiffs, AMC hired since January 14, 2016.

12.   So, the Helmick Action will adjudicate the claims for civil penalties for overtime and meal and rest break violations for those hired since January 14, 2016 only through entry of judgment in the Helmick Action. Otherwise, Plaintiffs therefore seek to recover herein the unpaid overtime and premium wages for missed meal and rest breaks owing to Flight Crew hired since January 14, 2016, regardless of when accrued. Plaintiffs also seek to recover the unpaid overtime and premium wages owed to Flight Crew whom AMC employed in California since the entry of judgment in the Helmick Action, regardless of when hired.

**EXCLUSION OF CLAIMS BASED ON WORK AT FORT HUNTER LIGGETT BASE AND LIMITATION OF CLAIMS OTHER THAN OVERTIME AND MEAL/REST BREAKS CLAIMS TO PERIOD SINCE FEBRUARY 14, 2018**

13.   In the Helmick Action, the Superior Court currently has stated its inclination to adjudicate that under the Federal Enclave doctrine bars recovery based on California overtime and meal and rest break protections for Flight Crew at AMC's Fort Hunter Liggett base.  Although Plaintiffs are informed and believe, and thereon allege that this is incorrect, notwithstanding any other allegation herein, Plaintiffs do not seek recovery barred by the Federal Enclave doctrine associated with the Fort Hunter Liggett base.

14.   In the Helmick Action, there was a partial settlement of the class claims other than those for overtime, meal/rest breaks, and related claims for civil penalties with a February 14, 2018 release date.  The Court in the Helmick Action ordered final approval of the partial settlement by Order, entered June 1, 2018.  Notwithstanding any other allegation herein, other than for overtime, meal/rest breaks, and related claims for civil penalties, Plaintiffs' claims herein are limited in time to those arising after the later of February 14, 2018 or any applicable statute of limitations.

**CLASS ACTION ALLEGATIONS**

15.   Plaintiffs' claims alleged herein are brought individually on behalf of the Plaintiffs and in a representative capacity on behalf of similarly situated current and former Flight Crew.  They assert

-4-

violations of California law on behalf of Plaintiffs and all others similarly situated, who are described as follows: all persons who, having been hired by AMC since January 14, 2016, performed services or perform services in California as a Flight Paramedic or Flight Nurse and all persons, regardless of when hired by AMC, who performed such services at any time after entry of judgment in the Helmick Action until such time as there is a final disposition of this lawsuit (hereinafter the "Class"). The Class includes the relatively infrequent circumstance of a Flight Crew Member who primarily works outside California to the extent the Flight Crew Member works in California.

16.     Plaintiffs, who seek to serve as representatives of the Class, are members of the Class. Like the other members of the Class, each Plaintiff suffered some form of injury of which complaint is herein alleged on behalf of the Class whom each Plaintiff seeks to represent, including not having been paid overtime pay in violation of California law and not having been provided duty free meal and rest periods or paid premium wages in their absence in violation of California law.

17.     Plaintiffs are unable to state the exact number of the Class. Plaintiffs are informed and believe, and thereon allege, that the Class exceeds 100 persons and are geographically dispersed, including across several counties in California. The members of the Class are so numerous as to make joinder impracticable. Plaintiffs are informed and believe, and thereon allege, that Defendants have identified or can readily identify members of the Class, but that it is impractical, in light of their number and geographic diversity to bring them all before this Court as named plaintiffs.

18.     The common questions of law or fact, which are of general interest, predominate over any questions affecting individual Class members only, rendering a class action a superior to other available methods for the fair and efficient adjudication of the controversy. These questions are such that proof of a state of facts common to the members of the Class will entitle each member of the Class to some form of relief as requested in this Complaint. The questions of law or fact common to the Class, include, but are not limited to, the following examples:

a) The rights that are the subject of this litigation are held in common by the Class' members, including Plaintiffs, arise under California law. The Class' claims for violation of California Business & Professions Code §§ 17200, et seq. insofar as failure to pay overtime

-5-

1    wages and failure to provide meal or rest periods or in their absence pay added wages rely on

2    the California Labor Code or Industrial Welfare Orders as predicate unlawful acts to support a

3    finding that Defendants have engaged and are engaging in unlawful business practices.

4        b)  Since at least January 14, 2016, Defendants have had a uniform policy and practice

5    for Plaintiffs and the Class of not paying all overtime owed, not providing duty free meal or rest

6    periods, and not paying premium wages for missed meal or rest periods.

7        c)  Since at least January 14, 2016, Defendants have uniformly misclassified Plaintiffs

8    and the other Class members as employees exempt under California law from overtime

9    protections based on: i) the Railway Labor Act, 45 U.S.C. §§ 151, et seq., though all Flight

10   Crew have been non-unionized and not subject to a collective bargaining agreement, rendering

11   that California exemption inapplicable as a basis of exempt status under California law and ii)

12   Wage Order 9-2001 [8 CCR § 11090 (2001)], § 3(K), though Flight Crew, as the Court found in

13   the Helmick Action by decision entered August 23, 2017, are not "ambulance drivers and

14   attendants" potentially subject to this daily overtime exemption.

15       d)  Since at least January 14, 2016, AMC has claimed in the Helmick Action that

16   California meal and rest break protections for all Flight Crew were preempted by the Airline

17   Deregulation Act, 49 U.S.C. § 41713, which defense the Court adjudicated to be without merit

18   by Order, entered November 29, 2017.

19       e)  Since at least January 14, 2016, Defendants have had a policy and a uniform practice

20   of paying Plaintiffs and the Class on an hourly basis such that they have not been salaried

21   employees.

22       f)  The binding effect to be given the judgment in the Helmick Action when final,

23   including under the legal doctrine of collateral estoppel.

24       19.    Plaintiffs will fairly and adequately protect the interests of the Class, whom they seek to

25   represent.  Plaintiffs' legal counsel, who is competent and experienced in wage and hour class action

26   litigation, will also fairly and adequately represent the Class.

27

28

                                      -6-

20. The claims of the Plaintiffs are typical of the claims of the Class they would represent. Plaintiffs are not asserting any individual claims qualitatively different from the Class claims.

21. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications of California law in different jurisdictions with respect to individual Class members, which could establish incompatible standards of conduct for Defendants.

22. Plaintiffs are informed and believe, and thereon allege, that Defendants, in refusing to pay and provide employee benefits as herein alleged to or for the members of the Class, including Plaintiffs, have acted and refused to act on grounds generally applicable to all claims, thereby making appropriate monetary relief for all members of the Class.

23. Wherefore, a well-defined community of interest exists among the members of the Class, including Plaintiffs.

## FACTUAL ALLEGATIONS

24. Except where otherwise alleged, the following circumstances have existed since at least January 14, 2016 and apply to the members of the Class, including Plaintiffs. The Class members have been or are hourly employees. Plaintiffs are informed and believe, and thereon allege, that AMC's practice has been to pay the Class members by direct deposit into their designated bank accounts on a bi-weekly basis.

25. Class members routinely work more than eight hours in a day and more than forty hours in a work week. Defendants do not pay all overtime due to Plaintiffs and the other Class members under California law. For flight duty shifts, which span calendar days and define the work day, Defendants regularly do not pay daily overtime and regularly do not count toward weekly overtime what AMC calls uninterrupted sleep periods of eight hours.

26. Defendants have not provided the Class all meal periods and rest periods as required by California law. The positions' job duties, as currently structured, impede taking off duty meal periods during flight duty shifts as provided by law insofar as these job duties include periods of required presence at a location designated by Defendants and performance of other duties so as to be available to attend to patients transported by helicopter during flight duty shifts and the performance of other

-7-

1   duties. Plaintiffs are informed and believe, and thereon allege, that Defendants, like other employers

2   engaged in California in the business of community based medical transport by helicopter, could, but

3   have elected not to, have Flight Crew enter into on duty meal agreements for flight duty shifts and that

4   sufficient time routinely exists to provide Flight Crew on duty meal periods such that Defendants

5   largely could have avoided and could avoid payment of premium hours for missed meal periods and

6   could avoid any significant impact on price, service or routing in providing meal and rest breaks.

7   Defendants, however, have not paid the Class premium hours for missed meal or rest periods, though,

8   Plaintiffs are informed and believe, and thereon allege, to do so would not have a significant impact

9   on AMC's routing, pricing, and service during flight duty shifts and that this is generally true of

10  California companies also engaged in community based helicopter medical transport for the same

11  reasons.

12      27.     Separately, AMC routinely has Flight Crew work non-flight duty shifts in California

13  during which Defendants have had Flight Crew, including Plaintiffs, among other activities, attend

14  mandatory trainings, staff meetings, and appear on AMC's behalf at community meetings.  Plaintiffs

15  are informed and believe, and thereon allege that Defendants' providing off duty meal or rest periods

16  for non-flight duty shifts can have no affect on AMC's routing, pricing, and service insofar as its flight

17  activities and that this is generally true of California companies engaged in community based

18  helicopter medical transport for the same reasons. Nevertheless, Plaintiffs are informed and believe,

19  that AMC routinely does not provide compliant meal or rest periods or, in their absence, pay premium

20  wages.

21      28.     The itemized pay statements that the Class members receive are inaccurate, including

22  because they do not accurately state hours worked at applicable hourly rates.  They also do not record

23  missed meal periods nor premium hour payments for which Class members are entitled as a result of

24  missing meal or rest periods.  Plaintiffs are informed and believe, and thereon allege, that their

25  inaccuracy impairs the ability of the Class to determine if they are correctly paid overtime and what

26  overtime is owed.  Plaintiffs are informed and belive, and thereon allege, that Defendants' time and

27  pay records are similarly inaccurate and do not accurately record sleeping periods.

28

-8-

29.  Class members are not paid accrued wages in a timely manner nor when they terminate employment.

**FIRST CLAIM BY ALL PLAINTIFFS ON BEHALF OF THEMSELVES AND THE CLASS AGAINST ALL DEFENDANTS FOR VIOLATION OF CALIFORNIA LABOR CODE AND CALIFORNIA INDUSTRIAL COMMISSION WAGE ORDERS – MEAL AND REST PERIODS**

**(Class Claim)**

30.     Plaintiffs hereby incorporate by reference as though fully set forth at length herein paragraphs 1–29 of this Complaint.

31.     As hereinabove alleged, Defendants willfully failed to provide duty free meal/rest periods, enter into on duty meal periods, or pay wages in lieu thereof as required by California Labor Code §§ 226.7 and 512, Wage Order 9-2001 [8 CCR § 11090 (2001)], §§ 11, 12, and comparable paragraphs in any other applicable Wage Order.  Defendants therefore breached their duties to Plaintiffs, and other members of the Class under the California Labor Code and California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)] or any other applicable Wage Order.  Plaintiffs are informed and believe, and thereon allege, that Defendants' providing meal and rest periods or paying added wages in their absence would not have a significant impact on AMC's routing, service, or price.  Plaintiffs are further informed and believe, and thereon allege, that generally that employers engaged in the business in California of community-based medical transport by helicopter could provide meal and rest periods or pay added wages in their absence without a significant impact on their routing, service, or price.

32.     Defendants willfully failed to pay all termination wages, including accrued added wages for missed meal/rest periods, within the thirty day time limit set forth for the payment of termination wages under California Labor Code §§201-203.  Defendants therefore breached their duties to the members of the Class who terminated their employment with AMC since February 14, 2018 under the California Labor Code.  Plaintiffs request that Defendants be required to pay the members of the Class, including Plaintiff Vielguth, who have terminated their employment with AMC at any time since February 14, 2018, waiting time penalties under California Labor Code §§201-203.

-9-

33.     Plaintiffs request that Defendants be required to pay to them and other members of the Class who performed services in California for AMC premium wages for missed meal/rest periods, as provided under California Labor Code and California Industrial Welfare Commission, including paragraphs 11-12 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)] and comparable paragraph within any other applicable Wage Order.  Plaintiffs further request that any unpaid residue be ordered paid "to nonprofit organizations or foundations to support projects that will benefit the Class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent..." as provided under California Code of Civil Procedure § 384(b).

34.     In pursuing the claims alleged herein, including their investigation and litigation, Plaintiffs have incurred or will incur attorneys' fees (and staff fees) and costs for which they seek reimbursement from Defendants.  These costs include, but are not limited to, filing fees, deposition charges, service of process fees, photocopying, telephone charges, fax charges, postage charges, travel/transportation expenses, messenger and other delivery charges, expert/consultant expenses, expenses associated with the preparation of evidence for presentation at trial, and other charges customary to the conduct of litigation. An award of such fees and costs is appropriate because the prosecution of this action will result in in the enforcement of an important right affecting the public interest as (a) a significant benefit, whether pecuniary or non-pecuniary, will be conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery.

Wherefore, Plaintiffs pray for a judgment as hereinafter set forth.

///

///

///

-10-

**SECOND CLAIM BY ALL PLAINTIFFS ON BEHALF OF THEMSELVESAND THE CLASS
MEMBERS AGAINST ALL DEFENDANTS FOR VIOLATION OF CALIFORNIA LABOR
CODE AND CALIFORNIA INDUSTRIAL COMMISSION WAGE ORDERS - OVERTIME**

**(Class Claim)**

35.    Plaintiffs hereby incorporate by reference as though fully set forth at length herein paragraphs 1 – 34 of this Complaint.

36.    As hereinabove alleged, Defendants willfully failed to pay to Plaintiffs and other members of the Class all overtime pay as required under the California Labor Code, including California Labor Code § 510, and under paragraph 3 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order.  Defendants therefore breached their duties to Plaintiffs and other members of the Class who have performed services in California under the California Labor Code and California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)] or any other applicable Wage Order.

37.    Defendants willfully failed to pay all termination wages, including accrued added wages for overtime, within the 30 day time limit set forth for the payment of termination wages under California Labor Code §§201-203.  Defendants therefore breached their duties to the members of the Class who terminated their employment with AMC since February 14, 2018 under the California Labor Code.  Plaintiffs request that Defendants be required to pay the members of the Class, including Plaintiff Vielguth, who have terminated their employment with AMC at any time since February 14, 2018, waiting time penalties under California Labor Code §§201-203.

38.    Plaintiffs request that Defendants be required to pay to Plaintiffs, and other members of the Class overtime wages as provided under California Labor Code and California Industrial Welfare Commission Wage Orders, including under paragraph 3 of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)].  Plaintiffs further request that any unpaid residue be ordered paid "to nonprofit organizations or foundations to support projects that will benefit the Class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent…" as provided under California Code of Civil Procedure § 384(b).

-11-

39.     In pursuing the claims alleged herein, including their investigation and litigation, Plaintiffs have incurred or will incur attorneys' fees (and staff fees) and costs for which they seek reimbursement.  These costs include, but are not limited to, filing fees, deposition charges, service of process fees, photocopying, telephone charges, fax charges, postage charges, travel/transportation expenses, messenger and other delivery charges, expert/consultant expenses, expenses associated with the preparation of evidence for presentation at trial, and other charges customary to the conduct of litigation.

Wherefore, Plaintiffs pray for a judgment as hereinafter set forth.

**THIRD CLAIM BY ALL PLAINTIFFS ON BEHALF OF THEMSELVES AND THE CLASS AGAINST ALL DEFENDANTS FOR VIOLATION OF CALIFORNIA LABOR CODE  AND CALIFORNIA INDUSTRIAL COMMISSION WAGE ORDERS – ITEMIZED PAY STATEMENTS AND TIME/PAY RECORDS**

**(Class Claim)**

40.     Plaintiffs hereby incorporate by reference as though fully set forth at length herein paragraphs 1–39 of this Complaint.

41.     As hereinabove alleged, Defendants willfully failed to provide itemized pay statements to Flight Crew as required by California Labor Code § 226 and paragraph 7(B) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order.  Defendants also failed to maintain wage time records as required by California Labor Code § 226 and paragraph 7(A) of California Industrial Welfare Commission Wage Order 9-2001 [8 CCR § 11090 (2001)], or any other applicable Wage Order.  The itemized pay statements that Plaintiffs and the Class received are inaccurate, including because they do not accurately state hours worked at applicable hourly rates. Plaintiffs are informed and  believe, and thereon allege, that their inaccuracy impairs the ability of Flight Crew to determine if they are correctly paid overtime and what overtime is owed. Defendants therefore breached their duties to Plaintiffs, and other members of the Class who have performed services in California since three years before the filing of this legal action under the California Labor Code and California Industrial Welfare Commission Wage Order 9-2001 or any other applicable Wage Order.

-12-

42.     Plaintiffs request that Defendants be required to pay to them, and other members of the Class who performed services in California for AMC at any time since February 14, 2018 damages or statutory penalties as provided under California Labor Code, including § 226.  Plaintiffs further request that any unpaid residue be ordered paid "to nonprofit organizations or foundations to support projects that will benefit the Class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent…" as provided under California Code of Civil Procedure § 384(b).

44.     In pursuing the claims alleged herein, including their investigation and litigation, Plaintiffs have incurred or will incur attorneys' fees (and paralegal fees) and costs for which they seek reimbursement.  These costs include, but are not limited to, filing fees, deposition charges, service of process fees, photocopying, telephone charges, fax charges, postage charges, travel/transportation expenses, messenger and other delivery charges, expert/consultant expenses, expenses associated with the preparation of evidence for presentation at trial, and other charges customary to the conduct of litigation.

Wherefore, Plaintiffs pray for a judgment and a decree as hereinafter set forth.

## FOURTH CLAIM BY ALL PLAINTIFFS ON BEHALF OF THEMSELVES AND THE CLASS AGAINST ALL DEFENDANTS FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### (Class Claim)

45.     Plaintiffs hereby incorporate by reference as though fully set forth at length herein paragraphs 1 - 44 of this Complaint.

46.     As hereinabove alleged, Defendants, in the course of AMC's business, have committed acts and engaged in a practice of unfair competition through unlawful acts, as defined by California Business & Professions Code §17200, including the following: a) not paying all overtime pay as California law requires, b) not providing meal/rest breaks and in their absence paying required added wages as California Labor Code §§ 226.7 and 512, California Wage Order 9-2001 [8 CCR § 11090

-13-

(2001)], ¶¶ 11-12, and comparable provisions within any other applicable Wage Order require, c) not providing itemized pay statements as California Labor Code § 226, California Wage Order 9-2001, ¶ 7(B), and comparable provisions within any other applicable Wage Order require, d) not timely paying accrued wages on termination of employment as California Labor Code §§ 201-203 require, and e) not maintaining time/pay records as California Labor Code § 226, California Wage Order 9-2001, ¶ 7(A), and comparable provisions within any other applicable Wage Order require.

47.    As a direct and proximate result of the above-described misconduct, Defendants have received and continue to hold ill-gotten gains belonging to others as described above, including Plaintiffs.   Plaintiffs therefore request that Defendants be ordered to make restitution and disgorgement of all said ill-gotten gains as part of a fluid fund recovery to be distributed in accordance with the Court's equitable discretion, including consideration that unpaid residue be paid "to nonprofit organizations or foundations to support projects that will benefit the Class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent..." as provided under California Code of Civil Procedure § 384(b).

48.    Plaintiffs request reasonable attorneys fees under California Code of Civil Procedure §1021.5.

Wherefore, Plaintiffs pray for judgment as follows.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek relief from this Court in the following respects:

1.    The Court declares, adjudges and decrees that this action is a proper class action and certifies the Class under California Code of Civil Procedure § 382.

2.    The Court declares, adjudges and decrees that regarding Class members during the periods applicable to the subject claims: a) Defendants violated the California Labor Code and California Industrial Welfare Commission Wage Orders, including in failing to pay overtime pay, failing to provide meal/rest periods or in their absence pay wages for on duty meal/rest periods as

-14-

1    required by Labor Code §§ 226.7 and 512, and applicable Wage Order(s), failing to provide itemized

2    pay statements as required under California Labor Code §226 and applicable Wage Order(s), failing

3    timely to pay accrued wages to Class members on termination of employment, and failing to maintain

4    time/pay records as required under California Labor Code § 226 and applicable Wage Order(s); b) time

5    during which these Class members are on duty constitutes compensable hours of employment for

6    purposes of the California Labor Code and California Industrial Welfare Commission Wage Orders; c)

7    Class members are entitled to an award for the unpaid overtime pay, wages for absence of duty free

8    meal/rest periods, waiting time penalties, penalties for absence of properly itemized wage

9    statements/record maintenance, and any other applicable statutory penalties; and d) equitable

10   distribution of the unpaid residue of any recovery pursuant to CCP § 384.

11       3.    The Court declares, adjudges and decrees that: a) Defendants violated the California

12   Unfair Business Practices Act/Unfair Competition Law, California Business & Professions Code §§

13   17200, et seq., by engaging in unlawful conduct, including in failing to pay overtime pay, failing to

14   provide meal/rest periods or in their absence pay wages for on duty meal/rest periods as required by

15   Labor Code §§ 226.7 and 512, and applicable Wage Order(s), failing to provide itemized pay

16   statements as required under California Labor Code §226 and applicable Wage Order(s), failing timely

17   to pay accrued wages to Class members on termination of employment, and failing to maintain

18   time/pay records as required under California Labor Code § 226 and applicable Wage Order(s); b) time

19   during which these Class members are on duty constitutes compensable hours of employment for

20   purposes of the California Labor Code and California Industrial Welfare Commission Wage Orders;

21   and c) Defendants should be ordered to make restitution and disgorgement of all ill-gotten gains,

22   including unpaid overtime and unpaid added wages for missed meal/rest periods, into a fluid recovery

23   fund; and d) equitable distribution of the unpaid residue of any recovery pursuant to CCP § 384.

24

25       4.    Reasonable attorneys fees and costs/expenses, both statutory and non-statutory.

26       5.    Pre-judgment and post-judgment interest as provided by law.

27       6.    Injunctive relief, including a temporary restraining order, preliminary injunction, and

28   permanent injunction as provided by law.

1    7.    Such other relief as the Court deems just and proper.

2

3    DATE: February 4, 2020                    LAW OFFICES OF JAMES M. SITKIN

4                                             SCHNEIDER WALLACE COTTRELL
                                              KONECKY WOTKYNS LLP
5

6                                      By: _____

7                                          JAMES M. SITKIN
                                           JOSHUA KONECKY
                                           LESLIE JOYNER
8                                          Attorneys for Plaintiffs

9

10

11   Plaintiffs hereby demand trial by jury.

12   DATE: February 4, 2020                    LAW OFFICES OF JAMES M. SITKIN

13                                            SCHNEIDER WALLACE COTTRELL
                                              KONECKY WOTKYNS LLP
14

15

16                                     By: _____

                                           JAMES M. SITKIN
17                                         JOSHUA KONECKY
                                           LESLIE JOYNER
18                                         Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28

-16-

COMPLAINT

*Christopher R. Lyons, et al. v. Air Methods Corporation, et al.*,
USDC Northern District, Court Case No. TBD

**DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL
TO U.S. DISTRICT COURT**

**EXHIBIT B (Summons)**

SUM-100

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AIR METHODS CORPORATION, and Does 1-100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CHRISTOPHER R. LYONS and  AMELIA G. VIELGUTH, individually and on behalf of
all those similarly situated

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED
FILED
ALAMEDA COUNTY

FEB 0 5 2020

CLERK OF THE SUPERIOR COURT
BY
JAMIE THOMAS, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Alameda County Superior Court of California<br>1225 Fallon Street, Oakland, California 94612 | CASE NUMBER: *(Número del Caso):*<br>RG20053409 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*  SEE ATTACHMENT

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* FEB 0 5 2020   Chad Finke | Clerk, by<br>*(Secretario)* | JAMIE J. THOMAS | Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED: You are served**

[SEAL]

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* Air Methods Corporation

   under: [X] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)    [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
   [ ] other *(specify):*
4. [X] by personal delivery on *(date)* 2/06/20

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

*Christopher R. Lyons, et al. v. Air Methods Corporation, et al.*,
USDC Northern District, Court Case No. TBD

**DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL
TO U.S. DISTRICT COURT**

**EXHIBIT C (Civil Cover Sheet)**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

— See Attachment

TELEPHONE NO.:                              FAX NO.:
ATTORNEY FOR *(Name)*: Christopher R. Lyons and Amelia G. Vielguth

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: SAME
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, California 94612
BRANCH NAME: Renè C. Davidson

**ENDORSED**
**FILED**
**ALAMEDA COUNTY**

FEB 0 5 2020

CLERK OF THE SUPERIOR COURT
By _____
JAMIE THOMAS, Deputy

CASE NAME:
Christopher R. Lyons, et al. v. Air Methods Corporation

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: RG20053409 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | JUDGE: |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[✓] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: 4
5. This case [✓] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 4, 2020

Leslie H. Joyner
_____
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

Filed By Fax

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE:  Christopher R. Lyons, et al v. Air Methods Corporation | CASE NUMBER: |
|---|---|

1 | ATTORNEYS FOR PLAINTIFFS:

2 | James M. Sitkins, SBN 107650

3 | LAW OFFICES OF JAMES M. SITKINS

4 | One Kaiser Plaza, Suite 505

5 | Oakland, CA 94612

6 | Tel: (415) 318-1048/Fax: (415) 362-3268

7 | Email: jsitkins@sitkinlegal.com

8 |

9 | Joshua G. Konecky, SBN 182897

10 | Leslie H. Joyner, SBN 262705

11 | SCHNEIDER WALLACE COTTRELL KONECKY LLP

12 | 2000 Powell Street, Suite 1400

13 | Emeryville, CA 94608

14 | Tel: (415) 421-7100/Fax: (415) 421-7105

15 | Emails: jkonecky@schneiderwallace.com / ljoyner@schneiderwallace.com

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 | *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, **not** line numbers)*:

27 | This page may be used with any Judicial Council form or any other paper filed with the court.   Page _____

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

ADDITIONAL PAGE
Attach to Judicial Council Form or Other Court Paper

CRC 201, 501

*Christopher R. Lyons, et al. v. Air Methods Corporation, et al.*,
USDC Northern District, Court Case No. TBD

**DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL
TO U.S. DISTRICT COURT**

**EXHIBIT D (ADR Info Packet)**

FP 35681615.7



# Superior Court of California, County of Alameda
# Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

---

The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial.  You may choose ADR by:

- Indicating your preference on Case Management Form CM-110;

- Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or

- Agree to ADR at your Initial Case Management Conference.

**QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
Or visit the court's website at http://www.alameda.courts.ca.gov/adr

---

## What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

## What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

## What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o  **Court Mediation Program**:  Mediators do not charge fees for the first two hours of mediation.  If parties need more time, they must pay the mediator's regular fees.

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation**: This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program** (non-binding): The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

### Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
2530 San Pablo Avenue, Suite A, Berkeley, CA 94702-1612
Telephone: (510) 548-2377    Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – Services that Encourage Effective Dialogue and Solution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035    Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100    Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

ALA ADR-001

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| | |
| TELEPHONE NO.:                         FAX NO. *(Optional)*: | |
| E-MAIL ADDRESS *(Optional)*: | |
| ATTORNEY FOR *(Name)*: | |

SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY

STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS:  All applicable boxes must be checked, and the specified information must be provided.**

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1.   Date complaint filed: _____.  An **Initial Case Management Conference** is scheduled for:

Date:                                    Time:                                    Department:

2.   Counsel and all parties certify they have met and conferred and have selected the following ADR process *(check one)*:

☐ Court mediation         ☐ Judicial arbitration

☐ Private mediation        ☐ Private arbitration

3.   All parties agree to complete ADR within 90 days and certify that:

a.   No party to the case has requested a complex civil litigation determination hearing;
b.   All parties have been served and intend to submit to the jurisdiction of the court;
c.   All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
d.   Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
e.   Case management statements are submitted with this stipulation;
f.   All parties will attend ADR conferences; and,
g.   The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                              (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Page 1 of 2

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____

(TYPE OR PRINT NAME)                              (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____

(TYPE OR PRINT NAME)                              (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,
rule 3.221(a)(4)

*Christopher R. Lyons, et al. v. Air Methods Corporation, et al.*,
USDC Northern District, Court Case No. TBD

**DEFENDANT AIR METHODS CORPORATION'S NOTICE OF REMOVAL
TO U.S. DISTRICT COURT**

**EXHIBIT E (Notice of Related Case)**

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>See attachment | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):*  Christopher R. Lyons, et al. v. Air Methods Corp. | **ENDORSED**<br>**FILED**<br>**ALAMEDA COUNTY**<br><br>FEB 05 2020<br><br>CLERK OF THE SUPERIOR COURT<br>By _____<br>JAME THOMAS, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **ALAMEDA**
STREET ADDRESS: **SAME**
MAILING ADDRESS: **1225 Fallon Street**
CITY AND ZIP CODE: **Oakland, 94612**
BRANCH NAME: **Rene C. Davidson**

| PLAINTIFF/PETITIONER: Christopher R. Lyons, et al. | CASE NUMBER:<br>RG20053409 |
|---|---|
| DEFENDANT/RESPONDENT: Air Methods Corporation | JUDICIAL OFFICER: |
| **NOTICE OF RELATED CASE** | DEPT.: |

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: William Loyd Helmick, et al. v. Air Methods Corporation
   b. Case number: RG13665373
   c. Court: [✓] same as above
      [ ] other state or federal court *(name and address):*
   d. Department: 21
   e. Case type: [ ] limited civil [✓] unlimited civil [ ] probate [ ] family law [ ] other *(specify):*
   f. Filing date: January 30, 2013
   g. Has this case been designated or determined as "complex?"  [✓] Yes  [ ] No
   h. Relationship of this case to the case referenced above *(check all that apply):*
      [✓] involves the same parties and is based on the same or similar claims.
      [✓] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
      [ ] involves claims against, title to, possession of, or damages to the same property.
      [✓] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
         [✓] Additional explanation is attached in attachment 1h
   i. Status of case:
      [✓] pending
      [ ] dismissed [ ] with [ ] without prejudice
      [ ] disposed of by judgment

2. a. Title:
   b. Case number:
   c. Court: [ ] same as above
      [ ] other state or federal court *(name and address):*
   d. Department:

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Cal. Rules of Court, rule 3.300
www.courtinfo.ca.gov

CM-015

| PLAINTIFF/PETITIONER:  Christopher R. Lyons, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Air Methods Corporation | |

2. *(continued)*

   e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 2h

   i. Status of case:

      ☐ pending

      ☐ dismissed   ☐ with   ☐ without prejudice

      ☐ disposed of by judgment

3. a. Title:

   b. Case number:

   c. Court: ☐ same as above

        ☐ other state or federal court *(name and address):*

   d. Department:

   e. Case type: ☐ limited civil   ☐ unlimited civil   ☐ probate   ☐ family law   ☐ other *(specify):*

   f. Filing date:

   g. Has this case been designated or determined as "complex?"   ☐ Yes   ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

      ☐ involves the same parties and is based on the same or similar claims.

      ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐ involves claims against, title to, possession of, or damages to the same property.

      ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

        ☐ Additional explanation is attached in attachment 3h

   i. Status of case:

      ☐ pending

      ☐ dismissed   ☐ with   ☐ without prejudice

      ☐ disposed of by judgment

4. ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 2/04/20

Leslie H. Joyner

▶ _____

(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)          (SIGNATURE OF PARTY OR ATTORNEY)

CM-015 [Rev. July 1, 2007]          **NOTICE OF RELATED CASE**           Page 2 of 3

CM-015

| PLAINTIFF/PETITIONER:   Christopher R. Lyons, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Air Methods Corporation | |

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1.  I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2.  I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*

    a. ☐ deposited the sealed envelope with the United States Postal Service.

    b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3.  The *Notice of Related Case* was mailed:

    a.  on *(date):*

    b.  from *(city and state):*

4.  The envelope was addressed and mailed as follows:

    a.  Name of person served:                          c.  Name of person served:

        · Street address:                                   Street address:

        City:                                               City:

        State and zip code:                                 State and zip code:

    b.  Name of person served:                          d.  Name of person served:

        Street address:                                     Street address:

        City:                                               City:

        State and zip code:                                 State and zip code:

☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____          _____
(TYPE OR PRINT NAME OF DECLARANT)                    (SIGNATURE OF DECLARANT)

1

2

**ATTACHMENT 1h**

**PRIOR RELATED LAWSUIT**

3        The claims asserted herein do not overlap with those for which recovery has been or will

4   be obtained in the pending action against AMC entitled, <u>William Loyd Helmick, et al. v. Air</u>

5   <u>Methods Corporation</u>, Alameda County Superior Court, case no. RG13665373 (hereinafter

6   "Helmick Action"), filed January 30, 2013, in which those plaintiffs sought to recover back

7   overtime and premium wages for California Flight Crew, among other items of relief. By way of

8   background, by Order entered November 24, 2015, the Court certified a class of Flight Crew

9   employed in California at any time from January 30, 2009 through class notice, the initial

10  issuance of which occurred on January 14, 2016, followed by subsequent transmissions later that

11  year.  Separate from the class claims, the plaintiffs in the Helmick Action asserted

12  representative, non-class claims under PAGA.

13        The plaintiffs in the Helmick Action proceeded to trial on the basis that PAGA permitted

14  recovery under Labor Code § 558 of back overtime and premium wages such that recovery of

15  these back wages and related interest did not require assertion of claims on other bases or, more

16  specifically, membership in the class the Court certified in the Helmick Action.

17        After the trial was conducted in July 2019 and during post-trial briefing, the California

18  Supreme Court entered its decision in <u>ZB, N.A. v. Superior Court</u> (2019) 8 Cal. 5th 175, in

19  which it held that Labor Code § 558 no longer could be employed by private PAGA plaintiffs as

20  a vehicle to recover back wages. In the post-trial briefing, plaintiffs in the Helmick Action

21  consequently modified their damage model to exclude recovery of back wages and interest by

22  non-Class members, i.e. those Flight Crew, like Plaintiffs, AMC hired since January 14, 2016.

23        So, the Helmick Action will adjudicate the claims for civil penalties for overtime and

24  meal and rest break violations for those hired since January 14, 2016 only through entry of

25  judgment in the Helmick Action. Otherwise, Plaintiffs therefore seek to recover herein the

26  unpaid overtime and premium wages for missed meal and rest breaks owing to Flight Crew

27  hired since January 14, 2016, regardless of when accrued. Plaintiffs also seek to recover the

28

1   unpaid overtime and premium wages owed to Flight Crew whom AMC employed in California

2   since the entry of judgment in the Helmick Action, regardless of when hired."

3          In sum, in this new action, Plaintiffs seek to recover back wages and interest related to

4   violations that the Court ruled upon or will rule upon in the pending Helmick action insofar as

5   Flight Crew who were hired since January 14, 2016. The overlap goes beyond common liability

6   issues. Insofar as the Court in the pending Helmick action awards civil penalties at the

7   subsequent rate under Labor Code §§ 210 and 225.5, the measure of the penalties includes 25% of

8   the withheld wages. In this new action, Plaintiffs are seeking to recover wages as such, which to

9   this extent already will have been quantified in the Helmick action, though the wage recovery

10  sought in this new action will also include the period after entry of judgment in the Helmick

11  Action. Consequently, there is substantial overlap in both liability and damage calculations

12  between the two actions, which will raise issues of collateral estoppel involving the need for

13  familiarity with what was or will be adjudicated in the Helmick action, which currently is in post-

14  trial proceedings moving to entry of judgment.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| SHORT TITLE: Christopher R. Lyons, et al v. Air Methods Corporation | CASE NUMBER: |
|---|---|

1  ATTORNEYS FOR PLAINTIFFS:

2  James M. Sitkins, SBN 107650

3  LAW OFFICES OF JAMES M. SITKINS

4  One Kaiser Plaza, Suite 505

5  Oakland, CA 94612

6  Tel: (415) 318-1048/Fax: (415) 362-3268

7  Email: jsitkins@sitkinlegal.com

8

9  Joshua G. Konecky, SBN 182897

10  Leslie H. Joyner, SBN 262705

11  SCHNIEDER WALLACE COTTRELL KONECKY LLP

12  2000 Powell Street, Suite 1400

13  Emeryville, CA 94608

14  Tel: (415) 421-7100/Fax: (415) 421-7105

15  Emails: jkonecky@schneiderwallace.com / ljoyner@schneiderwallace.com

16

17

18

19

20

21

22

23

24

25

26  *(Required for verified pleading)* The items on this page stated on information and belief are *(specify item numbers, not line numbers)*:

27  | This page may be used with any Judicial Council form or any other paper filed with the court. | Page _____ |

Form Approved by the
Judicial Council of California
MC-020 [New January 1, 1987]

**ADDITIONAL PAGE**
**Attach to Judicial Council Form or Other Court Paper**

CRC 201, 501