LONNIE D. GIAMELA
E-Mail lgiamela@fisherphillips.com
FISHER & PHILLIPS LLP
444 South Flower Street, Suite 1500
Los Angeles, California 90071

CHRISTOPHER M. AHEARN, SBN 239089
E-Mail cahearn@fisherphillips.com
SEAN T. KINGSTON, SBN 276099
E-Mail skingston@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Attorneys for Defendant
AIR METHODS CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER R. LYONS and AMELIA G. VIELGUTH, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AIR METHODS CORPORATION, and DOES 1 - 100, inclusive,<br><br>Defendants. | Case No: Case # 3:20-cv-01700-PJH (DMR)<br><br>*[Previously Alameda Superior Court Case Number RG20053409; Assigned to the Hon. Brad Seligman, Department 23]*<br><br>**DEFENDANT AIR METHODS CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date: May 13, 2020<br>Time: 9:00 a.m.<br>Place: Oakland Courthouse<br>Courtroom 3, 3rd Floor<br><br>Complaint Filed: February 5, 2020<br>Removal Filed: March 9, 2020<br>Trial Date: None Set |

## TABLE OF CONTENTS

I. INTRODUCTION ....................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND.........................................2

    A. If 1/14/2016 and Prior Hires are Included in Class Damages, the Amount In Controversy Exceeds $5,000,000, which Plaintiffs Do Not Dispute .............2

    B. Even if 1/14/2016 and Prior Hires are Excluded, the Amount in Controversy Nonetheless Exceeds $5,000,000 ......................................................6

    C. CAFA Requirements, Other than Amount in Controversy Are Clearly Met ....................................................................................................................7

III. LEGAL ARGUMENT ...........................................................................................7

    A. AMC's Burden in Opposition is a Preponderance of the Evidence....................8

    B. Plaintiffs' Self-Imposed Limitation on Claims is Invalid based on the U.S. Supreme Court Case of *Standard Fire Ins. Co. v. Knowles*. .............................11

        1. Plaintiffs' Stipulation is Not Binding on Putative Class Members and Therefore Cannot be Considered. ....................................................11

        2. The "Master of the Complaint" Rule Does Not Warrant a Different Result. ......................................................................................................15

    C. The Amount In Controversy Requirement is Met As to Post-1/14/2016 Hires...................................................................................................................15

    D. Attorney Fees and Costs Should Be Added to Any Amount in Controversy.......................................................................................................15

    E. Fort Hunter Liggett Must Be Included in the Amount-in-Controversy .............15

    F. AMC Accepts Plaintiffs' Representations Regarding "Off-the-Clock" Work and the Limitation Period for Cal. Lab. Code § 226(e) Claims................16

    G. If Any Doubt Exists as to Removability, Discovery Should be Conducted to Develop Relevant Facts. ..................................................................................17

IV. CONCLUSION.....................................................................................................18

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 3:20-CV-01700-PJH (DMR)

FP 37548480.6

# TABLE OF AUTHORITIES

**Pages**

## CASES

Amirian v. Umpqua Bank, No. CV 17-7574, 2018 WL 3655666, at *3-*4 (Jul. 31, 2018) ..................................................................................................................................... 10

Davis v. Barney's, No. CV 18-6627-JFW(SKx), 2018 WL 4940801, at *2 (Oct. 11, 2018) ................................................................................................................................. 9, 10

Jian-Ming Zhao v. RelayRides, Inc., No. 17-cv-04099, 2017 WL 6336082, at *1 (N.D. Cal. Dec. 12, 2017) ........................................................................................................ 17

Townsend v. Brinderson Corp., No. CV 14-5320 FMO (RZx), 2015 WL 3970172, at *3-*4 (June 30, 2015) .................................................................................................... 10

Turnage v. Old Dominion Freight Line, Inc., No. C 13-1409 PJH, 2013 WL 2950836 at *3 (June 14, 2013) ............................................................................................................ 15

## STATUTES

Cal. Lab. Code §§ 203 and 226(e) ................................................................................... 17

## FEDERAL CASES

Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 692 (9th Cir. 2006) ................... 17

Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S.Ct. 547, 551-554 (2014) ..... 9, 10, 11

Fritsch v. Swift Transportation Company of Arizona, 899 F.3d 785, 791-796 (2018) .............. 10

Garibay v. Archstone Communities LLC, No. 13-56151, 539 Fed. Appx. 763, 764-765 (2013) ......................................................................................................................... 10

Garnett v. ADT LLC, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015) ..................................... 9

Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010) .................................................................... 8

Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1196-1197 (9th Cir. 2015) ............. 9, 10

Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090-1091 (2003) ................ 9

Standard Fire Ins. v. Knowles, 568 U.S. 588, 590-595 (2013) ............. 5, 11, 12, 13, 14, 15, 16

Strotek Corp. v. Air Transport Ass'n. of America, 300 F.3d 1129, 1131 (2002) ................ 8

Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977) ........ 17

## FEDERAL STATUTES

28 U.S.C. § 1332(d)(2) ....................................................................................................... 7

28 U.S.C. § 1332(d)(5)(B) .................................................................................................. 8

FP 37548480.6

1  28 U.S.C. § 1446.................................................................................................8, 9

2  Fed. R. Civ. Proc. R. 56(c).......................................................................................9

3  FRCP 56.................................................................................................................9, 11

4  Rule 8(a) of the Federal Rules of Civil Procedure......................................................8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 3:20-CV-01700-PJH (DMR)

FP 37548480.6

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs' Complaint (ECF 001, Exhibit A thereto, hereinafter, the "Complaint", and their motion to remand (ECF 013, *et seq.* – hereinafter, the "Motion to Remand"), seek to artificially reduce the scope of the class claims in this action by excluding potentially recoverable amounts, such as meal and rest period premiums for medical flight crew members (hereinafter referenced as "medical flight crew" – consisting of paramedics and nurses) hired by Air Methods Corporation (hereinafter, "AMC" or "Defendant") on or before January 14, 2016 (hereinafter, the "1/14/2016 and Prior hires. They seek to limit the scope of claims to those of persons hired only after January 14, 2016, and additionally to any 1/14/2016 and Prior Hires who worked only after the date of judgment in the *Helmick* action, notwithstanding that such a limitation, depending on the outcome of disputed issues in *Helmick* (such as whether class damages for all class members cuts off as of January 14, 2016), could leave numerous class members and current and former medical flight crew to pursue remedies in other actions or proceedings.

Based on the holding of the U.S. Supreme Court in *See Standard Fire Ins. v. Knowles*, 568 U.S. 588, 590-595 (2013) (hereinafter, "*Knowles*"), such an attempt at limiting the scope of class claims in an artificial effort to avoid removal is improper, and the Court must consider all potential claims of the all putative class members when determining the amount in controversy. The value of such claims, based on testimony by AMC's expert Robert Crandall (also the expert in *Helmick*) is over $20 million. Although Plaintiffs may dispute this figure, in their Motion to Remand Plaintiffs stipulate that should all class damages for all *Helmick* class members after 1/14/2016 be included, the amount in controversy requirement in this case is met.

This $20 million figure could be reduced based on a variety of scenarios as set forth below, but in any event as is shown below, even if Plaintiffs' efforts to exclude the Fort Hunter Liggett base from the class, and to limit the class to post-1/14/2016 hires is successful, the amount in controversy remains well over $5 million.

/ / /

/ / /

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. If 1/14/2016 and Prior Hires are Included in Class Damages, the Amount In Controversy Exceeds $5,000,000, which Plaintiffs Do Not Dispute

As AMC pointed out in its notice of removal, the question of whether the 1/14/2016 and Prior Hires are entitled to class damages in *Helmick* in dispute, and such dispute has not yet been resolved by the trial Court. *See* Defendant Air Methods Corporation's Notice of Removal to U.S. District Court, ECF 001 (hereinafter, the "Notice of Removal"), at III.B.1, 6:10-8:22. The dispute includes the issue of whether the trial court's November 2015 class certification order should be construed to close the class as of the date of class notice for purposes of <u>class composition only</u> (Plaintiffs' position being that persons hired after the 1/14/2016 date of issuance of class notice are <u>not</u> class members in *Helmick*, but class damages continue to accrue for existing class members), or whether the class period closed for <u>all</u> purposes on 1/14/2016 (AMC's being that no class damages are available in *Helmick* for any persons as to the time period after such date). *Id.*

The dispute manifested itself initially in *Helmick* on a motion Plaintiffs made in August 2017 for an injunction to require AMC to commence paying daily overtime on 24-hour shifts, shortly after the trial court ruled that the Section 3(K) exemption on which AMC relied did not apply. (Declaration of Christopher M. Ahearn, filed and served herewith ("Ahearn Decl."), ¶ 2, <u>Exhibit A</u> thereto [Notice of Motion for Preliminary Injunction, filed August 3, 2017].) AMC opposed the motion, including on the ground that the trial court's class certification order terminated the class period as of the time of class notice, which Plaintiffs concede in their Complaint in this action was January 14, 2016. *See* ECF 001, Exhibit A [Plaintiffs' Complaint in Lyons] (hereinafter, the "Complaint"), ¶ 9; Ahearn Decl., ¶ 3, <u>Exhibit B</u> thereto [AMC Opposition to Motion for Preliminary Injunction, filed August 14, 2017], at 2:26 – 3:2; Ahearn Decl., ¶ 4, <u>Exhibit C</u> thereto [Order-Motion for Class Certification Granted, filed November 24, 2015], p. 7/final page, 4th full paragraph beginning "The court adopts".)

Although the *Helmick* court denied Plaintiffs' motion for an overtime payment injunction on the ground that Plaintiffs had "not shown that pecuniary compensation would not afford

2

adequate relief", where the "class representatives and many class members no longer worked for Defendant, and any Flight Crew who began their employment after the class period closed would also be affected by proposed preliminary injunction", the court did not directly rule on the question of the availability of class damages for overtime and meal/rest period premiums for the time period after January 14, 2016. (Ahearn Decl., at ¶ 5, <u>Exhibit D</u> thereto [Order Denying Motion for Preliminary Approval, filed August 25, 2017].)

The parties' dispute in this regard continues to this day, and is referenced parties' post-trial briefs, and in their objections (and responses thereto) to the Court's pending statement of decision. Ahearn Decl., at ¶ 6, Exh. E thereto [Def. AMC's June 24, 2019 Trial Brief], at 10:23-11:7; ¶ 7, Exh. F thereto [Plaintiffs' Sept. 18, 2019 Post-Trial Brief], at 8:3-9:5; ¶ 8, Exh. G thereto [AMC's September 18, 2019 Post-Trial Brief] at 24:23-25:14 & fn 172-177 (Restricting class damages to "Period 1" as referenced in Defendant's expert analysis of Robert Crandall); ¶¶s 9-10, Exh. I thereto [such Crandall presentation, Trial Exhibit No. 806, referenced in Exh. H fn 172-177], at p. 48-70 (identifying the time periods and respective damage calculations) & Exh. H thereto at 141:15-21, 142:7-9 (trial transcript identifying Exhibit 806); ¶ 11, Exh. J thereto [Def. AMC's Jan. 30, 2020 Objections to Proposed Statement of Decision], at 4:4-8; ¶ 12, Exh. K thereto [Def. AMC's Feb. 13, 2020 Resp. to Pltfs' Obj. to Prop. Stmt. Of Decision], at 5:15-18.

The *Helmick* Court's pending statement of decision, which resolved certain legal issues in the case, was preliminary only, and no final statement of decision has issued. Ahearn Decl., at ¶ 13, Exh. L thereto [Court's Jan. 16, 2020 Statement of Decision], at para. 2 thereto (declining to adopt paragraphs 37-46 regarding Plaintiffs' proposed class period damages, and not mentioning the question of the class period damages cutoff in January 2016); ¶ 14, Exh. M thereto [Plaintiff's Sept. 18, 2019 Proposed Statement of Decision], at ¶¶ 37-46 (including class damages past January 2016). Specifically, the Court has not yet ruled on the amount of monetary remedies, including the question of whether class damages include those accrued after January 14, 2016. *Id*. Ahearn Decl., at ¶ 13. Such matters remain in dispute including based on AMC's objections

/ / /

to the Court's proposed statement of decision. *Id.* Plaintiffs do not dispute this. Pltfs' Brief at 12:7-12.

If AMC's position on the above-referenced dispute is correct, then the 1/14/2016 and Prior Hires would still potentially have claims for class damages for the time period after 1/14/2016, even prior to the date of judgment in *Helmick*, regardless of whether Plaintiffs purport not to seek relief on such claims in *Lyons* in an artificial attempt to defeat removal. Based on Plaintiffs' own expert calculations presented to the trial court in *Helmick*, the amount of such damages (excluding Section 203 penalties for terminations after 2/14/2018 and Section 226(e) penalties for pay periods on and after February 5, 2019 – which Plaintiffs suggest should also be excluded for these persons) is approximately $9,808,705. *See* Declaration of Robert Crandall[1], filed and served herewith (hereinafter, "Crandall Decl."), ¶¶ 1-26 (background), 27 & p. 14 ("Scenario 1a") (showing overtime, meal and rest damages in the total amount of $17,601,631 when 1/14/2016 and prior hires are included) & p. 16 ("Scenario 3a.") (showing overtime, meal and rest damages in the amount of $7,792,926 when only post-1/14/2016 hires are included – with the difference between this number and $17,601,631 being $9,808,705). This is based on Plaintiffs' own expert's calculations, for the period after January 14, 2016 and through May 11, 2019, in addition to analysis of actual time and payroll records for the subsequent time period through March 28, 2020. Crandall Decl., ¶ 3 & fn 1; *see* Declaration of Claire Capacci, filed and served herewith, (hereinafter, "Capacci Decl.") ¶¶ 2-4 & Exhs. A through C-2. As such, assuming AMC prevails on its theory in *Helmick* that class damages in *Helmick* cut off as of 1/14/2016, Plaintiffs appear intent, based on their proposed limitations on the class in Lyons, on leaving millions of dollars in meal, rest, and overtime premiums "on the table"[2]. *Id.*

---

[1] The data analyzed by Crandall is attached in .pdf form in accordance with the Court's E-filing requirements, though it was analyzed by Crandall, and is being provided today to Plaintiffs' counsel, in its original .xls format. Ahearn Decl., ¶ 15. The data is fully identified and described, in pertinent part, in the accompanying Declaration of Claire Capacci, at ¶¶ 1-4 & Exhs. A through C-2 thereto, and Crandall's declaration is based upon the facts set forth in the Capacci declaration and exhibits thereto. Crandall Decl., ¶ 3 & fn 1.

[2] Excluding Fort Hunter Liggett, this figure would be $8,973,427, which is the difference between the Scenario 1 overtime, meal and rest premiums in the amount of $15,898,196, and those for Scenario 3 of $6,924,769. Crandall Decl., ¶ 27 and pp. 14, 16 (Scenarios "1" and "3").

To the extent that such amounts may deemed not recoverable in the *Helmick* action, however, based on AMC's argument that the class period in that case was cut off for all purposes, including class damages, as of 1/14/2016, such amount would constitute potential "claims of. . . individual class members", requiring aggregation for purposes of CAFA jurisdiction. Complaint, ¶ 12 (1/14/2016 and Prior Hires are class members, though Plaintiffs attempt to exclude claims prior to judgment in *Helmick*, as is discussed in more detail in section III.B *infra*, should be disregarded on this motion. *See Standard Fire Ins. v. Knowles*, 568 U.S. 588, 590-595 (2013).

Additionally, as is noted above, the total amount in controversy on all claims, regardless of hire date, is $20,082,283. Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & p. 14 ("Scenario 1a"). If 203 and 226(e) penalties are excluded from this scenario for 1/14/2016 and Prior Hires, as Plaintiffs also suggest, this amount is reduced by only a total of $116,700 (for 226(e)) + $543,132 (for 203) = $659,832, reducing the amount in controversy to $19,422,451. *See* Crandall Decl., ¶¶ 25-26 & fn 11, 14.

Additionally, if Fort Hunter Liggett is excluded, the total amount in controversy including the class damages regardless of date of hire, is $18,356,498. *See* Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & p. 14 ("Scenario 1"). If 203 and 226(e) penalties are excluded from this scenario for 1/14/2016 and Prior Hires, as Plaintiffs also suggest, this amount is reduced by only a total of $106,600 (for 226(e)) + $543,132 (for 203) = $649,732, reducing the amount in controversy to $17,706,766. *See* Crandall Decl., ¶¶ 25-26 & fn 11, 14.

Additionally, Plaintiffs' class definition also appears to suggest that even if 1/14/2016 and Prior Hires are included in the class, the class would not include such persons who did not perform medical flight crew services in California until after the date of judgment in *Helmick*, an event that has not yet occurred. Complaint, ¶ 15 & Pltfs. Brief at 13:7-9. Of course, it is not possible at this stage to determine precisely who is and is not in this group, but if one were to additionally exclude from the class the 1/14/2016 and Prior Hires who have no flight duty shifts in California on or after March 15, 2020, which is knowable, the amount in controversy when 1/14/2016 and Prior Hires are included in the class is only reduced to $16,662,771. *See* Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & p. 15 ("Scenario 2a") This figure would be $15,172,366, if

5

Fort Hunter Liggett is also excluded). *Id.* at "Scenario 2")[3]. Accordingly, even if such a restriction were deemed proper (which it is not under *Knowles*) as discussed in Section III.B, *infra*, it would not warrant remand on its own. *Id.*

In any event, Plaintiffs, in their Motion to Remand, do not seem to dispute that if all class damages, including overtime, and meal and rest period premiums, for 1/14/2016 and Prior Hires are included, the amount at issue would likely be over $10,000,000, and the amount-in-controversy requirement is met. Pltfs' Brief, at 12:12-17[4].

## B. Even if 1/14/2016 and Prior Hires are Excluded, the Amount in Controversy Nonetheless Exceeds $5,000,000

As is shown in the Crandall Declaration, the total amount in controversy, even when claims are isolated to medical flight crew commencing work in California only after 1/14/2016, the total amount in controversy is approximately $9,613,746 if Fort Hunter Liggett is included), and $8,733,339 if Fort Hunter Liggett is excluded. *See* Crandall Decl., ¶ 27 & "Scenario 3a" and "Scenario 3").

Plaintiffs are correct that these figures differ from the figures offered by Crandall and Breshears in the *Helmick* matter. Pltfs' Brief, at 4:3-5:12. As to Crandall's *Helmick* number, this is due to a discrepancy identified by Crandall in the analysis in *Helmick* where not all employees Hired after 1/14/2016 were excluded from the total damages figures, when he attempted to isolate the figures for those persons from the rest of the class. Crandall Decl., ¶ 14. As to Breshears's

---

[3] Similar to Scenarios 1 and 1a, discussed above, removing 203 and 226(e) penalties for 1/14/2016 and Prior Hires should only reduce the amount in controversy on Scenarios 2 and 2a by a six-figure amount (less than $1,000,000), because the reductions resulting in Scenarios 1 and 1a from the same exclusion were in the six-figures, and Scenarios 2 and 2a represent a sub-set of Scenarios 1 and 1a. Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & p. 14, 15 (See charts for Scenarios 1, 1a, 2, and 2a); ¶¶ 25-26 & fn 11, 14.

[4] Plaintiffs are incorrect regarding their reference to a typo in their footnote 10. The referenced term "include" at 8:14 in the Notice of Removal was intended to refer to the fact that if one includes Class Damages for all of the 1/14/2016 and prior hires, then based on Plaintiffs' own calculations, the CAFA amount in controversy is reached, a concept that Plaintiffs agree with. Pltfs. Brief, at 12:16-17. The reference to post 1/14/2016 hires in the remainder of the sentence at Notice of Removal 8:14 potentially added to the confusion. The main point is that the figure of approximately $13 million in Class Damages was based on Plaintiffs' own calculations, *if* one includes all those who worked after 1/14/2016. Notice of Removal, ¶ 22.

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND - 3:20-CV-01700-PJH (DMR)

FP 37548480.6

*Helmick* numbers for the post-1/14/2016 hires, this is due to Breshears simply having understated the value of the claims of such persons pertaining to overtime, meal and rest periods, and 203 and 226(e) penalties. *Id.* & Attachments B and C thereto.

Additionally, the value of claims in *Helmick* accruing after May 11, 2019 (approximately the end point of data available for trial) was not precisely known (due to a cutoff of data available prior to the July 2019 trial, and was estimated by applying an assumed daily accrual amount. Ahearn Decl., ¶ 9 & Exh. H, ¶10 & Exh. I (no exact figures included after May 11, 2019); ¶ 16 & Exh. N at 10:8-11-11 & Exhs. 3-5 (see heading indicating estimated daily accrual amount after May 11, 2019). However, AMC opened several bases in California in 2018 and 2019, including some at or around the time of trial, which were either not reflected in the data available at trial in *Helmick* or were only minimally available, with one base having opened in late 2018 for example. Capacci Decl., ¶ 5; Crandall Decl., ¶ 10 & fn 3. This accounts for a significant increase in the amount in controversy as to the time period from May 12, 2019 to present, when looked at in proportion to prior time periods *Id.*

### C. CAFA Requirements, Other than Amount in Controversy Are Clearly Met

Plaintiffs, and the vast majority of putative class members, are residents and citizens of California, while AMC, which is incorporated in Delaware and has its principal place of business and corporate "nerve center" in the State of Colorado, is a citizen of Delaware and Colorado. Capacci Decl., ¶¶ 9-10. This has been the case since at least February 5, 2020. *Id.* Additionally, there are more than 100 putative class members, even when restricted to medical flight crew members who have worked in California who have been hired since January 14, 2016 (actually there are over 200). Crandall Decl., ¶ 8.

### III. LEGAL ARGUMENT

On February 18, 2005, Congress enacted the Class Action Fairness Act of 2005 (hereinafter, the "CAFA"). The CAFA gives U.S. District Courts original jurisdiction over civil class action lawsuits in which any member of the putative class is a citizen of a state different from any defendant (minimal diversity), and in which the matter in controversy exceeds the sum or value of $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). The CAFA

7

authorizes removal of such actions in accordance with 28 U.S.C. § 1446, provided that there are more than one hundred (100) putative class members. *See* 28 U.S.C. § 1332(d)(5)(B). For purposes of minimal diversity, the citizenship of a corporate defendant such as AMC is based on the location of its "nerve center" *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This is the corporation's "nerve center." *Id*. at 78. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters. . ." *Id*. The headquarters is the place from which the corporation's business activities are directed, controlled, and coordinated. *Id*. Diversity is determined both as of the filing of the Complaint (here, on February 5, 2020) (see Complaint) and the filing of the Notice of Removal (here, on March 9, 2020) (*see* ECF 001). *See Strotek Corp. v. Air Transport Ass'n. of America*, 300 F.3d 1129, 1131 (2002) (affirming denial of motion to remand where parties were diverse at the time of filing and removal).

The requirements of "minimal" diversity and more than 100 putative class members are met here, including in that AMC is and was at all relevant times since January 14, 2016 incorporated in Delaware with its principal place of business and headquarters in Colorado, and the named Plaintiffs and the vast majority of putative class members were and remain California residents and citizens. Capacci Decl., ¶¶ 9-10; Crandall Decl., ¶ 8.

Although Plaintiffs refer to a supposed dispute concerning diversity (Pltfs' Brief at 2:4 & n.2), they do not really explain such dispute, and the main thrust of their argument clearly pertains to the amount-in-controversy requirement. Plaintiffs are incorrect in disputing the amount in controversy, for the reasons stated below.

## A.    AMC's Burden in Opposition is a Preponderance of the Evidence

Plaintiffs' make the simply false assertion that AMC had an obligation to submit persuasive evidence with its Notice of Removal. Pltfs' Brief at 1:18-20. While that may have been the rule in some courts in years past, that has not been the rule for quite some time. To wit, In 2014, the U.S. Supreme Court held that notices of removal are subject to the same general pleading standards applicable to complaints pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, and that accordingly such notices need not attach evidence or meet a burden of proof, but rather need only contain a "short and plain statement of the grounds for removal." *Dart*

*Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551-554 (2014) (quoting 28 U.S.C. § 1446(a)). This governing principle also applies to a removing party's allegations as to the amount in controversy. *Id.*; *Garnett v. ADT LLC*, 74 F. Supp. 3d 1332, 1334 (E.D. Cal. 2015); *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1196-1197 (9th Cir. 2015). Only if the Court, or another party, contests the allegations of removability must the removing party submit evidence supporting its allegations, whereupon removability is decided under a preponderance of the evidence standard. *Dart Cherokee, supra*, 135 S.Ct. at 553-554. And, based on the U.S. Congress's expressed intent in passing CAFA to confer federal jurisdiction on large class actions, there is no "presumption against removal" in CAFA cases. *Id.* at 554.

Plaintiffs' cases purporting to require "summary-judgment"-type evidence are inapposite and do not really explain what "summary-judgment"-type evidence is (as opposed to ordinary admissible evidence), beyond stating that it is "real" evidence that goes beyond speculation, conjecture and conclusory allegations. *Matheson*, for example, adopted a now-abrogated rule from the Fifth Circuit that a removing defendant must include "summary judgment" type evidence at the time of removal. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-1091 (2003). This rule was abrogated by the U.S. Supreme Court in *Dart Cherokee*, which held that a <u>notice</u> of removal is a pleading and does not require evidence of any kind, with evidence required only if removability is challenged. *Dart Cherokee, supra*, 135 S.Ct. At 551-554.

AMC does not dispute that such evidence in response to a challenge to a notice of removable should be "persuasive, competent, and admissible" (Pltfs' Brief at 10:6), but there is no support for the notion that it must "show. . . a foundation that satisfies FRCP 56" (*Id.* at 10:7). Neither Rule 56 nor Plaintiffs cases do not support this latter concept. Rule 56 on its face does not apply to removals, and only states that evidence should be specific and admissible. *See* Fed. R. Civ. Proc. R. 56(c), (e). *Davis* does not reference Rule 56 or summary judgment, and simply reiterates the holding in *Dart Cherokee* that a defendant responding to a challenge must "put forward evidence showing that the amount in controversy exceeds $5 million ... and to persuade the court that the estimate of damages in controversy is a reasonable one." *Davis v. Barney's*,

9

No. CV 18-6627-JFW(SKx), 2018 WL 4940801, at *2 (Oct. 11, 2018). *Amirian* merely reiterates that evidence should be admissible. *Amirian v. Umpqua Bank*, No. CV 17-7574, 2018 WL 3655666, at *3-*4 (Jul. 31, 2018); *see also Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1121 (2016) (evidence should be admissible and have foundation, and not be speculative). *Townsend* is somewhat more specific by reiterating the burden-shifting process outlined in *Dart Cherokee* that is similar to summary judgment in that it involves the removing defendant, on challenge to removability, should provide a preponderance of evidence that the amount in controversy exceeds $5 million, whereupon the burden shifts to the plaintiff. *Townsend v. Brinderson Corp.*, No. CV 14-5320 FMO (RZx), 2015 WL 3970172, at *3-*4 (June 30, 2015). *Garibay* is an unpublished opinion that merely stands for the proposition that evidence should not consist of bare assumptions. *Garibay v. Archstone Communities LLC*, No. 13-56151, 539 Fed. Appx. 763, 764-765 (2013).

 *Fritsch* is inapposite in that it dealt with the issue of whether future attorney fees can be included in an amount in controversy (the court concluded they *can* be), and the alleged mootness of the appeal due to a second removal notice by the defendant. *Fritsch v. Swift Transportation Company of Arizona*, 899 F.3d 785, 791-796 (2018). The Court ruled for the appealing (removing) party. *Id.*

 In *Ibarra*, the Court simply observed that, upon challenge to removability, there must be some factual support for the amount in controversy, and remanded the case back to the District Court for further development of facts in relation to the amount in controversy, finding a lack of factual support for the removing party's contention that violations occurred every pay period, and a lack of factual response from Plaintiff as to a more realistic violation rate. *Ibarra v. Mannheim Investments*, 775 F.3d 1193, 1196-1200 (2015). Here, of course, the allegation *is* that violations occur every pay period, due to AMC's regular practice of applying exemptions and preemptions to exclude employees from the scope of California's daily overtime, and meal and rest period laws. Complaint, ¶¶ 5, 18(b)-(d), 26-27; Capacci Decl., ¶¶ 6-7.

 Accordingly, the Court should not be misled into applying a higher standard than it would on any other law and motion matter – Defendant's evidence should be considered on a

preponderance standard. Plaintiffs do not, fundamentally, dispute this. Pltfs' Brief at 10:2. For any higher standard to apply would violate the holding in *Dart Cherokee* that because CAFA was intended by Congress to expand the scope of federal jurisdiction, there is no "presumption against removal" in CAFA cases. *Dart Cherokee*, 135 S.Ct. at 554. For the same reason, the Court cannot apply the Rule 56 standard that that disputes or controversies are to be resolved against the moving party (here, the removing party), for to import this summary judgment rule in CAFA removal cases would be contrary to the same intent of the U.S. Congress to broaden the scope of federal jurisdiction in such cases and *Dart Chrokee's* holding that there is no such "presumption against removal." *Dart Cherokee*, 135 S.Ct. at 554.

The District Court's role in ruling on Plaintiffs' Motion to Remand is to decide, based on a preponderance of the evidence, that the elements of CAFA removal are met.

**B.**    **Plaintiffs' Self-Imposed Limitation on Claims is Invalid based on the U.S. Supreme Court Case of *Standard Fire Ins. Co. v. Knowles*.**

Plaintiffs do not dispute that the CAFA amount in controversy requirement would be met if class damages as to the 1/14/2016 and Prior Hires are included along with the Post-1/14/2016 Hires. Pltf's Brief at 12:16-22. AMC's Notice of Removal pleaded an amount in controversy as to both groups, collectively, in excess of $13 million, which Plaintiffs do not dispute. *Id.*; NOR, at 8:10; Pltfs' Brief at 12:12-15. Nor do Plaintiffs dispute that the parties' dispute as to whether the 1/14/2016 and Prior Hires are entitled to class damages in the *Helmick* action is unresolved in the *Helmick* matter. Pltfs. Brief at 12:7-12.

Accordingly, Plaintiffs' Motion to Remand turns on the straightforward legal question of whether the Court should recognize Plaintiffs' self-imposed limitation on the putative class in *Lyons*. Based on clear precedent from the U.S. Supreme Court interpreting CAFA, Court should not recognize such limitation, for the following reasons.

*1.    Plaintiffs' Stipulation is Not Binding on Putative Class Members and Therefore Cannot be Considered.*

In *Standard Fire Ins. Co. v. Knowles*, the U.S. Supreme Court considered a case in which a class action Plaintiff (alleging that the defendant, an insurance company, failed to includer

11

certain types of fees in payments on homeowners' insurance claims) attached an affidavit to his complaint stating that he would not seek in excess of $5,000,000 in damages in the case. *Standard Fire Ins. v. Knowles*, 568 U.S. 588, 590-591 (2013). The defendant removed the case to the U.S. District Court. *Id.* at 591. The plaintiff argued for remand on the basis of his affidavit as to the amount in controversy. *Id.* The District Court found that, in the absence of the plaintiff's stipulation, the amount in controversy based on the defendant's evidence exceeded $5,000,000. *Id.* The District Court accepted Plaintiff's stipulation and remanded the case. *Id.* The defendant appealed, and the U.S. Court of Appeals for the Eight Circuit declined to take the appeal based on a statutory provision allowing for such discretion as to a remand order. *Id.* The U.S. Supreme Court reversed the District Court's ruling for the straightforward reason that the plaintiff's stipulation was not binding on the putative class members, because no class had yet been certified in the case, and accordingly the plaintiff did not represent the putative class members and could not bind them with respect to a limitation on monetary recovery. *Id.* at 592-593. Accordingly, the U.S. Supreme Court concluded that Plaintiff's stipulated amount was "contingent" and not a proper basis for remand. *Id.* at 593.

The U.S. Supreme Court considered the plaintiff's counter-argument that, even if the state court were to insist upon a modification of the Plaintiff's stipulation to provide class members with the damages to which they were actually entitled in excess of $5,000,000, based on Plaintiff's stipulation, this would result in a new, different case separate from the claims in the case at issue. *Knowles*, 568 U.S. at 594. The U.S. Supreme Court rejected this argument, holding:

> "Our problem with this argument lies in its conclusion. We do not
> agree that CAFA forbids the federal court to consider, for purposes
> of determining the amount in controversy, the very real possibility
> that a nonbinding, amount-limiting, stipulation may not survive the
> class certification process. This potential outcome does not result
> in the creation of a new *595 case not now before the federal court.
> To hold otherwise would, for CAFA jurisdictional purposes, treat
> a nonbinding stipulation as if it were binding, exalt form over

substance, and run directly counter to CAFA's primary objective: ensuring "Federal court consideration of interstate cases of national importance." § 2(b)(2), 119 Stat. 5. It would also have the effect of allowing the subdivision of a $100 million action into 21 just–below–$5–million state-court actions simply by including nonbinding stipulations; such an outcome would squarely conflict with the statute's objective."

"We agree with Knowles that a federal district court might find it simpler to value the amount in controversy on the basis of a stipulation than to aggregate the value of the individual claims of all who meet the class description. We also agree that, when judges must decide jurisdictional matters, simplicity is a virtue. See Hertz Corp. v. Friend, 559 U.S. 77, 94, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). But to ignore a nonbinding stipulation does no more than require the federal judge to do what she must do in cases without a stipulation and what the statute requires, namely "aggregat[e]" the "claims of the individual class members." 28 U.S.C. § 1332(d)(6)."

*Knowles*, 568 U.S. at 594-595.

Here, although Plaintiffs certified a class in the *Helmick* action, no class has been certified in this action. Accordingly, Plaintiffs cannot bind absent class members with stipulations limiting the scope of monetary recovery. And, although Plaintiffs attempt to couch their proposed limitation not as a strict monetary cap with a number, but rather as a limitation on the scope of the class definition (Pltfs' Brief at 12:20-22) and/or a limitation on the time period for which damages are sought (*Id.* at 13:7-9), this is a distinction without a difference. Namely, 1/14/2016 and Prior Hires *are* putative class members in *Lyons*, with the only difference being that Plaintiffs purport to remove the limiting criteria of the post-1/14/2016 hire date only "regarding claims

based on services performed after the entry of judgment in *Helmick*, an event yet to occur." Pltfs' Brief at 13:7-9; Complaint, at ¶ 15, 5:3-4.

Additionally, Plaintiffs do not, nor can they, argue that if the trial court in *Helmick* adopts AMC's interpretation of the November 2015 Class Certification Order, those claims of the 1/14/2016 and Prior Hires would somehow disappear or no longer be actionable. Rather, such order would lead to precisely the sort of a new, *different* case that the *Knowles* court held would be an absurd and improper result. *Knowles*, 568 U.S. at 594-595. As the *Knowles* court pointed out, this result (of a new and different claim) must be avoided, and the District Court's obligation is to simply "aggregate the claims of the individual class members." *Knowles*, 568 U.S. at 594-595. Put differently, gamesmanship with damages caps and artfully-worded class definitions clearly designed for the purpose of avoiding removal, are to be disregarded, and the Court must look at the realistic relief potentially available to the putative class members based on Plaintiffs' theories. *Id.* Here, as to the 1/14/2016 and Prior Hires, this means including in the CAFA amount-in-controversy their potential class damages as to the entire time period from 1/14/2016 forward, which Plaintiffs do not dispute would result in the amount-in-controversy requirement in this action being met. Pltfs' Brief at 12:16-17.

As is noted above, Plaintiffs' class definition also appears to suggest that even if 1/14/2016 and Prior Hires are included in the class, such sub-group would not include such persons who did not perform medical flight crew services in California until after the date of judgment in *Helmick*, an event that has not yet occurred. Complaint, ¶ 15 & Pltfs. Brief at 13:7-9. Of course, it is not possible at this stage to determine precisely who is and is not in this group, but if one were to additionally exclude from the class the 1/14/2016 and Prior Hires who have no flight duty shifts in California on or after March 15, 2020, which is knowable, the amount in controversy when 1/14/2016 and Prior Hires are included in the class is only reduced to $16,662,771. *See* Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & p. 15 ("Scenario 2a") This figure would be $15,172,366, if Fort Hunter Liggett is also excluded). *Id.* at "Scenario 2"). Accordingly, even if such a restriction were deemed proper (which it is not under *Knowles*), it would not warrant remand on its own. *Id.*

14

2.      *The "Master of the Complaint" Rule Does Not Warrant a Different Result.*

The *Knowles* court also rejected the plaintiff's argument that he was the "master of his complaint." *Knowles,* 568 U.S. at 595-596. The U.S. Supreme Court rejected this argument for the simple reason that the plaintiff in a non-certified case does not bind the absent class members. *Id.*

## C.      The Amount In Controversy Requirement is Met As to Post-1/14/2016 Hires

Even if class damages as to 1/14/2016 and Prior Hires is not included in the amount in controversy, a preponderance of evidence shows that the amount in controversy requirement is met, namely, as is shown in the Crandall Declaration, the total amount in controversy, even when claims are isolated to medical flight crew commencing work in California only after 1/14/2016, the total amount in controversy is approximately $9,613,746 if Fort Hunter Liggett is included), and $8,733,339 if Fort Hunter Liggett is excluded. *See* Crandall Decl., ¶ 27 & "Scenario 3a" and "Scenario 3"). As is noted in section II.B, *supra*, the differences between these figures and the figures presented by the experts in *Helmick* are explained in the Crandall declaration.

## D.      Attorney Fees and Costs Should Be Added to Any Amount in Controversy.

Additionally, it is reasonable and proper to add 25% to an amount in controversy requirement for prevailing-party attorney fees and costs, which Plaintiffs seek in this action. Complaint, at 15:25; *Turnage v. Old Dominion Freight Line, Inc.*, No. C 13-1409 PJH, 2013 WL 2950836 at *3 (June 14, 2013). Adding 25% to any of the amount-in-controversy figures listed above would significantly reinforce that the amount exceeds $5,000,000 by a significant margin.

## E.      Fort Hunter Liggett Must Be Included in the Amount-in-Controversy

Plaintiffs disagree with the holding in the *Helmick* Court's currently-pending statement of decision that AMC's Fort Hunter Liggett base is a federal enclave in which Plaintiffs' California Labor Code theories do not apply there. Pltfs' Brief at 14:10-20. Plaintiffs nonetheless argue that they do not seek recovery as to shifts worked at Fort Hunter Liggett. *Id*. Plaintiffs eschew such potential recovery despite the fact that numerous medical flight crew worked shifts there (approximately 12.5% of such crew members employed after 1/14/2016, and ), and despite the fact that Plaintiffs dispute the *Helmick* court's decision in this regard (which they correctly

15

point out has been objected to by Plaintiffs). Pltfs' Brief at 14:10-20; Crandall Decl., ¶ 16, fn 7. Additionally, nearly 100% of such persons, who worked at Fort Hunter Liggett at one point or another, 84.2% worked at other bases, as to which Plaintiffs do admittedly intend to seek class relief (including for at least some 1/14/2016 and Prior Hires, as to future time periods), thus resulting in an artificial limitation of claims even for persons who are admittedly class members. *Id*.

Plaintiffs do not contend, however, that collateral estoppel would bar this Court from reaching a different result regarding Fort Hunter Liggett's status as a federal enclave. Pltfs' Brief at 14:10-20. Indeed, they correctly point out that the *Helmick* Court has not yet issued a final judgment, and Plaintiffs have objected to such court's federal enclave ruling. Pltfs' Brief at 14:10-20. In this sense, the federal enclave status of Fort Hunter Liggett remains a live dispute. *See id*. Plaintiffs merely state that they do not seek relief for shifts at this base and insist as a basis for this that they are the "masters of their complaint." *Id*.

As noted above, *Knowles* bars such maneuvers as a means of avoiding removal. For Plaintiffs to exclude this base would artificially reduce the recovery of putative class members, who they do not yet represent in this action, contrary to rules set by the U.S. Supreme Court. *See Knowles,* 568 U.S. at 594-596. This result obtains regardless of whether Plaintiffs are the "masters of their complaint."

Additionally, even if Fort Hunter Liggett is excluded, the case would remain removable, under any of the scenarios contemplated in this opposition. *See* Crandall Decl., ¶¶ 1-26 (background), ¶ 27 & 14-16 at "Scenario 1" (including class damages for all employees working after 1/14/2016) in the amount of $18,356,498, "Scenario 2" (excluding those with no shifts after March 15, 2020) in the amount of $15,727,998, or "Scenario 3" (including only post 1/14/2016 hires) in the amount of $9,383,071.

## F. AMC Accepts Plaintiffs' Representations Regarding "Off-the-Clock" Work and the Limitation Period for Cal. Lab. Code § 226(e) Claims

Defendant's inclusion of the "off-the-clock" work claim was based on Plaintiffs' failure, in their Complaint, as they have done in their Motion to Remand, to clarify the meaning of the

16

reference to claims "other than for overtime, meal/rest breaks, and related claims for civil penalties" in the Complaint. Complaint, ¶ 14, 4:22-25. For the same reason, Defendant interpreted Plaintiffs' complaint as attempting to run Section 226(e) claims back to February 14, 2018. Now that Plaintiffs have clarified that the reference to "other" claims is a reference to claims for statutory Cal. Lab. Code §§ 203 and 226(e) penalties (Pltfs' Brief at 13:26-14:1),

AMC also stipulates that the limitation period on Section 226(e) claims in this action runs back to February 5, 2019, and amounts for Section 226(e) penalties allegedly accrued prior to such date, need not be included in the amount-in-controversy for CAFA purposes.

## G.    If Any Doubt Exists as to Removability, Discovery Should be Conducted to Develop Relevant Facts.

If the Court has any doubt that AMC has established the amount-in-controversy requirement, AMC requests a short continuance of the Motion to conduct discovery specific to the amount in controversy. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) ("[I]t is clear that a court may allow discovery to aid in determining whether it has in personam or subject matter jurisdiction."); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 692 (9th Cir. 2006) (holding that the Senate Judiciary Committee Report issued ten days after CAFA's passage into law "confirms that any decision regarding jurisdictional discovery is a discretionary one"); *Jian-Ming Zhao v. RelayRides, Inc.*, No. 17-cv-04099, 2017 WL 6336082, at *1 (N.D. Cal. Dec. 12, 2017) (following a hearing on plaintiff's motion to remand, denying plaintiff's motion "without prejudice to bringing a renewed motion after the parties have had an opportunity to conduct limited jurisdictional discovery" on the amount in controversy under CAFA).

Discovery could include, for example, expert depositions to the extent any lingering doubt is based on conflicting expert analyses.

/ / /

/ / /

/ / /

/ / /

IV.   **CONCLUSION**

For the foregoing reasons, AMC requests that the Court deny Plaintiffs' motions, or in the alternative to stay or continue any remand order so that appropriate discovery, including expert discovery, and be conducted to aid in the determination of the amount in controversy.


Dated:  April 22, 2020                                   Respectfully submitted,

                                                         FISHER & PHILLIPS LLP


                                        By:   /s/ Christopher M. Ahearn
                                              LONNIE D. GIAMELA
                                              CHRISTOPHER M. AHEARN
                                              SEAN T. KINGSTON
                                              Attorneys for Defendant
                                              AIR METHODS CORPORATION

FP 37548480.6